# CHARLESTON.

STATE *v.* HOWARD HIVELY *et al.*

(No. 6456)

Submitted November 20, 1929. Decided November 26, 1929.

*Harper & Baker* and *Grover F. Hedges,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

MAXWELL, JUDGE:

Defendant prosecutes this writ of error to a conviction of grand larceny and a sentence of two and one-half years confinement in the state penitentiary.

The defendant and Alva Jones were jointly indicted. They were first tried together and convicted, but on writ of error, the judgment was reversed, the verdict set aside and a new trial awarded. *State* v. *Hively et al.,* 103 W. Va. 237. Thereafter the defendants severed and each was separately convicted. The separate records are now before this Court for review. The Court's decision in the *Jones* case appears contemporaneously herewith in an opinion by JUDGE LITZ.

The indictment charges the defendant and Jones with the theft of $30.00 from Susan Walker. Nobody saw them take the money. The evidence is wholly circumstantial. The boys lived at least three miles from the home of Mrs. Walker, an aged woman who seems to have been living alone at the time of the alleged theft. In the latter part of a rainy afternoon in October they walked to her home for the purpose, they say, of gathering chestnuts. After their arrival at her home, they brought into the house for her, at her request, a small amount of firewood and then, with her permission, went to see about chestnuts. She says they asked permission to stay all night at her home, which she refused; they deny this. At any rate, they left her home a short time before dark, after having gathered a few pockets full of chestnuts, not exceeding, according to the highest estimate of either of them, a total of one-half gallon, and proceeded down the road a distance estimated to be about a quarter of a mile to the store of George Taylor. He had left the store and repaired to his home nearby, but responded to their call and returned to the store and sold them a few articles of merchandise, including a flashlight, some 32 caliber cartridges, cigarettes, and three loaves of bread. Mr. Taylor says that in response to his inquiry as to what they were doing abroad on such a bad night, they told

him they had been at Cy Carpenter's home and were on their way to their homes, but the boys say that Mr. Taylor misunderstood them, that they told him they were thinking of going to Cy Carpenter's. They left the store after a little while, and, they say, slept in a barn that night. The next morning they again appeared at the home of Mrs. Walker and delivered to her two of the three loaves of bread which they had purchased the night before. It seems that she had requested them to bring her some bread. She says she gave them their breakfast and that immediately upon finishing the meal they both hastened out of the house and hurriedly left the premises. The boys deny that she gave them their breakfast and insist that they were not in her house that morning at all. About the time the boys left her premises Mrs. Walker's hog-pen was found to be on fire, and she says that immediately after they left her home she heard several shots fired. They deny any knowledge of the fire and of having fired the shots. One of the neighbors who came to Mrs. Walker's home while the out building was burning says he noticed a fresh bread wrapper near the scene of the fire, and Mrs. Walker says that the loaves which the boys gave her that morning did not have any wrappers on them. Later that day the boys appeared at the town of Walton, and the defendant went to the Poca Valley Bank and obtained change for a ten dollar bill. Later the same day the defendant changed a ten dollar bill for Frank Reynolds, a garage man, at Walton. The boys were seen together on the street and the defendant at that time had paper money in his hand. The thirty dollars which was taken from the home of Mrs. Walker consisted of two ten dollar bills, a five and five ones. It was her pension money which had been brought to her within a day or two preceding by the mail carrier who had taken her pension check to be cashed for her. At the time of this occurrence in October, 1925, the defendant was about seventeen years of age and the Jones boy about fifteen. The defendant says that he had his own money on his person throughout the period covered by this recital. But it is significant that he makes not the slightest effort to account for how or where

he acquired the money. The circumstances warranted the jury in convicting the defendant of the theft charged in the indictment.

Though the indictment charges only the theft of money, there was much said in the evidence about a revolver which Mrs. Walker says disappeared from her home at the same time the money was taken, and this is relied on as error. We do not perceive the error. Evidence with reference to the revolver was proper as part of the *res gestae*. On cross-examination the witness Jones admitted that he had made a certain untrue statement to the grand jury about this matter but said he had done so because he had been told by the prosecuting attorney to make that statement. In rebuttal, the prosecuting attorney took the witness stand for the purpose of denying the accusation which had been made against him by Jones, and in his testimony the prosecuting attorney said that ''Jones has gone on the witness stand and told a number of things which are positively untrue.'' Then, upon objection by defendant's counsel and upon suggestion by the latter that the prosecuting attorney and court should refresh their recollection by reading the opinion of this Court on the former writ of error involving the joint conviction of the two boys, the prosecuting attorney said: ''I just got through telling you I know what the Supreme Court said about it, but I am not going to sit here and let the witness go on the witness stand and swear a positive lie on me without letting the jury know the other side of it.'' It is a safe, conservative and general rule that lawyers should not go on the witness stand in cases in which they are counsel, and the highest standards of the profession dictate that this restraint should not be lightly discarded, but instances arise in which such course cannot be criticised nor condemned. In the instant case we perceive no impropriety on the part of the prosecuting attorney in going on the witness stand to refute the serious charge of official misconduct which had been laid at his door by the witness Jones, but in making such refutation attorney should have used more moderate language. ''Lie'' and ''liar'' are strong words that have no place in a judicial trial. But the fact that

the language used by the prosecuting attorney was unduly emphatic does not of itself constitute prejudicial error.

In the argument of the case before the jury the prosecuting attorney's assistant indulged in some very intemperate language, and this is assigned as error. It appears from bill of exception No. 3 that in the course of the closing argument for the state counsel used this language: "We are closing the argument on behalf of every citizen in the county. I represent you—each of you. I represent your wives, I represent your mothers and your children. And I represent every school house and I represent every church in Roane county. You listen and see if I am not going to be fair about the case. I am going to do my duty although God Almighty interfere, and if he does he knows the truth about it. I know what the facts are in the case, and I know you know, and I know you can't hide behind your ignorance and say you don't know." * * * "What kind of a day was it? How far away were they? About four miles, the defendant says. The truth of it is, I know that country over there, and if it is an inch less than five miles it is ten thousand to where old Aunt Susan Walker lives. I know every inch of it, rabbit hunted over it. Will, say four miles, on a rainy day, rain pouring down, along at three or four o'clock." And further, in commenting on the testimony of the witness Jones with reference to the course he and the defendant traveled after they left Taylor's store, counsel said: "You go to the mouth of Big Creek. You don't cross the creek. You go to the mouth of the John Harper hollow, out at the head of it and over on the other side, and he swore a lie when he said that, and there is one member of the jury knows he lied." At which point there was a protest and objection on the part of counsel for defendant. Whereupon, the prosecuting attorney's assistant, Thomas P. Ryan, continued: "I only wish the rest of you knew what kind of trumped-up, hot air pack of perjury has been introduced here to try to get this boy found not guilty." It further appears from the said bill of exceptions that at the conclusion of Mr. Ryan's argument, counsel for the defendant moved the court to strike out the said quoted portions of his argument

together with other portions designated in the motion, which motion of the defense, the bill of exceptions states, Mr. Ryan asked the court to sustain. We are not informed by the record as to what was the trial court's action on this motion of the defense in which counsel for the state joined, but we must assume that the trial court discharged its plain duty and directed the jury to disregard the said improper remarks. A trial court is always presumed to have discharged its duty unless the contrary appears. If the court did not discharge its duty on this motion, the same should have been made to appear in the bill of exceptions or by certiorari if necessary. On the review of the record governing the joint conviction of the defendant and Jones, a reversal was predicated in no small degree on the improper remarks made by the prosecuting attorney. It is surprising, therefore, that we here have in smaller degree a repetition of the same sort of thing. Abusive, extravagant and unjustifiable language on the part of counsel in argument or otherwise, has no proper place in a trial. It is to be condemned without qualification. In our conference there was strong manifestation of opinion to reverse this case because of the objectionable language used by Mr. Ryan in his closing argument, but a majority of the Court finally concluded, for the reason aforesaid, namely, that the trial court must be presumed to have discharged its duty on the joint motion of counsel to direct the jury to disregard the said objectionable language, not to reverse the judgment on that ground.

A remark made by the court in the course of the trial is assigned as prejudicial error. On cross-examination of the witness, George Taylor, he was asked with reference to a certain statement made by him on the second trial but which he had not made on the first trial, and he answered, in substance, that that matter had not been inquired of him on the first trial. Whereupon, the judge observed, in the form of a question: "You wouldn't know whether that was material or not if they did not ask you?" To which the witness replied: "No, I wouldn't know." It is not apparent how the said query of the court could be considered as prejudicial to the defendant. We see no impropriety therein.

So far as is disclosed by the printed record no instructions were given on behalf of the state. Thirteen were tendered for the defendant and all were given except Nos. 3 and 8. No. 3 was properly refused because it purported to recite the circumstances but did not contain a full recital of all the material circumstances. Instruction No. 8 was to the effect that any statements or confessions made by the defendant's co-indictee, Alvin Jones, tending to implicate the defendant, not made in the presence of the defendant, could not be considered as evidence against the defendant. This instruction was refused by the court because the substance thereof was covered by defendant's instruction No. 13, which latter instruction reads: "The court instructs the jury that although you may believe from the evidence that the witness Alva Jones may have made an alleged confession to the Prosecuting Attorney and other statements as to the guilt of the defendant Hively of the charge against him in this case, still you cannot consider any of such statements or any part thereof as any evidence against the defendant Hively, but such statements, if any were made by Alva Jones, can only be considered by you as going to the credibility of Alva Jones and not as to the guilt of Howard Hively." There was no error in the refusal of instructions numbers 3 and 8.

The judgment of the trial court is affirmed.

*Affirmed.*