STATE OF WEST VIRGINIA *v.* ALBERT WENDLING

(No. 7188)

Submitted March 24, 1932. Decided March 29, 1932.

*M. F. Matheny* and *Floyd H. Harless,* for plaintiff in error.
*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Defendant, who was convicted in the intermediate court of Kanawha county of the larceny of one Holstein steer of the value of $100.00, complains of the action of the circuit court of said county in refusing him a writ of error.

According to the state's theory, the steer, together with a heifer, were taken on the afternoon of August 21, 1930. The steer belonged to Leonard Haynes and the heifer to his brother. A few days prior to the 21st both animals were on pasture about a mile and a half above the end of the paved street which extended some distance up Magazine Hollow. The field upon which the animals were grazing was fenced by either four or five strands of wire, and was the property of Leonard Haynes' father. Five witnesses testified that they saw the defendant and his co-indictees load the steer and heifer into the former's truck, which was standing at the end of the paving, and drive down towards Charleston. One of the five, as well as A. J. Harper, the latter an employee of the Virginian Electric Company, recognized the steer and heifer as the ones seen in the Haynes pasture. The descriptions of the animals correspond with that given by the owners. Harper saw the truck in the vicinity shortly before the animals were loaded, and in driving to the city a short time later he overtook and passed the truck carrying the steer and heifer. He wrote the license number on the windshield of the car he was driving. Three people, who lived opposite defendant's slaughter house on the south side of the city, saw defendant that evening drive up with a steer and

heifer bearing the same description and proceed to kill and dress them. They stated that the hides together with the heads, contrary to defendant's usual custom, were thrown in with the other off-falls and carried away the same evening.

Defendant denied the larceny. His wife and another testified that Earl Stutler, a witness for the state, was converted shortly after the finding of the indictment, and confessed to them that he had committed the larceny. Stutler, however, denied any such statements. A number of witnesses were introduced to show that defendant was at Pinch on the afternoon and evening of the 21st—the date of the alleged larceny—for the purpose of taking orders for ice and meat for the Pinch Reunion, which began on the following day. Others, including several prominent citizens of Kanawha county, testified as to his reputation for honesty, integrity and fair dealing.

Defendant also proffered testimony to the effect that he owned 13 calves at the time of the alleged larceny, and had other cattle under contract, in both Kanawha and adjoining counties. The trial court's action in rejecting such evidence is stressed as error, on the theory that it has a material bearing on the element of criminal intent, and tends to show lack of motive. The *animus furandi* or intent to steal is the intent of the taker to deprive the owner permanently of his property. *State* v. *Caddle,* 35 W. Va. 73, 12 S. E. 1098; *Vaughan* v. *Lytton,* 126 Va. 671, 101 S. E. 865. It is well settled that felonious intent may be inferred by the jury from the facts and circumstances of the case. *Booth* v. *Com.,* 4 Gratt. 525; *Webb* v. *Com.,* 122 Va. 899; *West* v. *Com.,* 125 Va. 747. The evidence of the butchering in connection with the other facts was sufficient to show intent to deprive the owner of the animals. Defendant did not attempt to show that he had any cattle suitable for butchering. We see no evidential value in the proffered testimony, nor wherein it could in any way have influenced the jury verdict; especially in view of the positive evidence of the state.

It is argued that the instruction given for the state conveyed the idea to the jury that the defendant was relying solely upon alibi as a means of defense, when in fact he had

other defenses. This instruction told the jury that where the state has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused. Four instructions were given at the instance of the defendant. The first dealt with the proof necessary to convict and the presumption of innocence; the second with the jury's consideration of the character evidence; the third told the jury that the state, under the circumstances, must prove beyond a reasonable doubt that the defendant was present at the time and place fixed by its witnesses; and the fourth told the jury that as one means of defense under the plea of not guilty, defendant had a right to show by competent proof that he was at another and different place, at the time of the commission of the alleged offense; that such part of his defense is known in law as an alibi and if he has proved to their satisfaction that he was in the neighborhood of Pinch Reunion grounds, etc., at the time of the commission of the alleged offense, then such facts should be taken into consideration and they should acquit him. The proposition of law set out in the state's instruction is not questioned; nor do we see error in it. In view of the defendant's instructions, which clearly recognize that there were other defenses, we must dismiss this contention as without merit.

The evidence was conflicting and was for the jury. They have seen fit to believe the witnesses for the state. "If a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges." Point 1, syllabus, *State* v. *Winans*, 100 W. Va. 418, 130 S. E. 607.

Perceiving no error, the judgment must be affirmed.

*Affirmed.*