STATE OF WEST VIRGINIA

*v.*

WALDON KEITH DAVIS

(No. 12853)

Submitted February 3, 1970.     Decided March 3, 1970.

*Steptoe & Johnson, Carl F. Stucky, Jr.,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz, John Troelstrup, Willard A. Sullivan,* Assistant Attorneys General, for defendant in error.

CALHOUN, JUDGE:

This criminal case is before the Court on a writ of error and supersedeas granted to an order of the Circuit Court of Kanawha County entered on March 14, 1969, by which that court, sitting as an intermediate appellate court, refused to grant an appeal and supersedeas to an order entered by the Intermediate Court of Kanawha County on September 26, 1968, by which judgment was entered on a jury verdict finding Waldon Keith Davis, the plaintiff in error, guilty as alleged in a joint indictment which charged Waldon Keith Davis and his brother, Gary Wayne Davis, with a crime defined in Code, 1931, 61-2-12, as amended, which is commonly referred to as armed robbery. By its final judgment order entered on the jury verdict, the trial court sentenced Waldon Keith Davis to confinement in the penitentiary of this state for a period of thirty years.

The joint indictment against Waldon Keith Davis and his brother, Gary Wayne Davis, charges that they, being armed with a pistol, made an assault upon Walter R.

Lawman and consequently stole United States currency in the sum of $505 which had been entrusted to Lawman as an agent, servant and employee of Elk Finance and Loan Company, a corporation.

Alfred Runnion testified that on October 10, 1967, he transported two men in his taxicab from Nitro to Charleston, West Virginia, and that the two men alighted from the taxicab about noon at the corner of Tennessee Avenue and Washington Street, West, which is in the general area in which Elk Finance and Loan Company is located. The witness identified the defendant in court as one of the two persons who had been transported by him. Gary Wayne Davis, testifying as a witness in behalf of his brother in this case, stated that he was the other passenger in the taxicab on the occasion in question.

Walter R. Lawman testified that he operates Elk Finance and Loan Company; that he is one of the owners of that corporation; that at about 2:15 p.m., on October 10, 1967, two young men came into his place of business and stated that they wanted to confer with the witness concerning a proposed loan; that Houston Harold Gunter came into the place of business thereafter and renewed a loan; that one of the two young men, subsequently identified by both Lawman and Gunter as the defendant, came to the counter where the loan to Gunter was being made and had a conversation with Gunter; and that the defendant was wearing dark glasses.

The defendant and his brother were identified in court by Lawman as the two young men who committed the robbery. Lawman testified that the defendant held a pistol within two feet of the face of the witness and demanded that he open the cash drawer; that the brother of the defendant knocked the witness to the floor; that the defendant, still brandishing the pistol in a threatening manner, demanded that the witness open the cash drawer; that he complied with the defendant's demand and opened the cash drawer, whereupon the two men took $505 in currency from the cash drawer and fled through the front

door; that immediately thereafter the witness went through a side door to a sidewalk from which place he saw the two young men running north on Bigley Avenue about 300 feet away; that by telephone he caused the city police to be summoned; that the police arrived within about five minutes; and that later "that evening" he saw the defendant in a police cruiser and recognized him as one of the two men who had participated in the robbery.

Houston Harold Gunter testified that he is the man who received a loan of $100 from Elk Finance and Loan Company on October 10, 1967. He testified that two "boys" were in the place of business while the loan was being made to him and that he had a conversation with one of them whom he identified in court as the defendant in this case.

Shortly after the police arrived at the scene of the robbery, they proceeded to search for the two suspects in a wooded area on a hillside which apparently is near the place where they were last seen by Lawman. Samuel Elmore, a member of the Charleston Police Department, testified that he participated in the search for the two suspects about 5:30 p.m., on the day in question, that during the search he came upon two white males lying on the ground in the woods and that they "had some undergrowth pulled over top of them, trying to conceal themselves." These two persons were subsequently identified by witnesses as the defendant and his brother. Officer Elmore testified that one of the two men lying on the ground, the one later identified as the defendant, was holding a revolver; that he commanded the two men to "put down the gun and come on out"; that the defendant pushed the revolver off his chest and onto the ground; that the witness called for Captain Fisher, another city police officer; and that, when Captain Fisher arrived, the two suspects were placed under arrest and handcuffed. Officer Elmore picked up the revolver from the ground and handed it to Captain Fisher. The weapon was later identified in court by both officers as a 22-caliber revolver.

Robert F. Sigmon, a member of the Charleston Police Department, testified that he came upon the scene on the wooded hillside shortly after the defendant and his brother were arrested by the other officers. He identified the defendant and his brother in court as the two persons who had been arrested. Officer Sigmon testified that, in the presence of other officers, he searched the two suspects after they had been taken to police headquarters. On the person of the defendant, he found in the pockets of his trousers $126 in United States currency, a piece of lady's hose and a box containing forty rounds of live 22-caliber ammunition. He also found $100 in ten dollar bills inside the sock on the defendant's left foot and $100 in twenty dollar bills inside the sock on the defendant's right foot, making a total of $326 in currency taken from the person of the defendant.

James Delano Epling, a detective assigned to the Charleston Police Department, identified $326 in currency, "a piece of stocking," a pair of "black colored Vanguard sunglasses," a 22-caliber pistol and forty rounds of 22-caliber ammunition which, according to his testimony, he had received from officers Fisher and Sigmon following the arrest of the two suspects. Officer Epling identified $505 in currency which had been delivered to him by the two officers and which, according to their testimony, they had taken from the persons of the defendant and his brother at the police station following their arrest.

Officer Epling testified that, after the defendant had been warned of his "constitutional rights" by Detective Richard Gordon, the witness heard the defendant confess orally that he and his brother robbed Elk Finance and Loan Company on October 10, 1967. At the time he testified, the witness had in his possession an unsigned typewritten copy of the confession made orally by the defendant. Detective Gordon testified that he was present when the defendant orally confessed that he and his brother had committed the robbery and that the defendant had previously been advised of his "constitutional rights" on two occasions.

The defendant did not testify in his own behalf at the trial. The only witness who testified in behalf of the defendant at the trial was his brother, Gary Wayne Davis, who had been convicted of armed robbery previously on the joint indictment. He testified that on October 10, 1967, he and his brother, the defendant, drank a fifth of vodka at the home of their grandmother at Nitro; that later the witness obtained a gun, presumably a pistol, at the home of his grandmother; and that thereafter he and the defendant traveled by taxicab to Washington Street in the City of Charleston near Staats Hospital. He testified that, at that place, they both got out of the taxicab and that the defendant departed with a person named David Young; that the witness joined an unidentified "boy" from Detroit; that he, the witness, and the boy from Detroit robbed Elk Finance and Loan Company; that he carried the gun meantime; that his brother did not participate in the robbery but that later during the same day he saw his brother, who was then with David Young, and gave the defendant some of the money he had taken during the robbery.

In the motion to set aside the verdict and to award the defendant a new trial, and also in the petition for writ of error and supersedeas filed in this Court, numerous assignments of error have been asserted. The assignments of error were summarized and reduced to six in number for the purpose of discussion in the brief filed by counsel for the defendant in this Court. Presumably other assignments of error have been waived or abandoned. *State* v. *Summerville*, 112 W. Va. 398, 401, 164 S. E. 508, 509; Rule VI, Subsection 2, of the Rules of this Court; 24A C. J. S., Criminal Law, Section 1846, page 597. In any event, we perceive no substance in the assignments of error thus urged and apparently abandoned. We will proceed, therefore, to consider the assignments of error discussed in the brief filed in behalf of the defendant and in the brief filed in behalf of the state in this Court.

It is urged in behalf of the defendant that, by reason of his poverty or indigence, his constitutional rights were

"thwarted" by the action of the trial court in refusing to enter an order providing for the expense of obtaining the deposition of David L. Young, a resident of Ayden, North Carolina, who is alleged to have been a material witness at the trial of the accused in connection with his defense of alibi. The motion made to the trial court was that the court enter an order authorizing the taking of the deposition of the witness in North Carolina, and further authorizing the employment of counsel practicing at or near the place of the taking of the deposition to represent the accused in the taking of the deposition or, in the alternative, "to authorize the payment of the reasonable expense of the defendant's present counsel to travel to the place of the deposition to examine the said witness on behalf of the defendant."

The motion was first made on May 20, 1968. By an order previously entered on February 26, 1968, the case had been continued, on the motion of the defendant, until the next term of the court "because of the unavailability of a necessary and material witness". The trial court entered an order on May 22, 1968, granting permission to the defendant to take the deposition of the nonresident witness and, for that purpose, the case was again continued until the next term of the court. The same order recites that the court took under advisement the portion of the motion which involved employment of counsel in North Carolina or, in the alternative, the payment of reasonable expenses of the defendant's trial counsel in traveling to North Carolina and in taking the deposition of the witness.

By an order entered on June 17, 1968, the case was set for trial on July 17, 1968. In the meantime, by an order entered on July 3, 1968, the trial court overruled the portion of the motion which related to the employment of counsel in North Carolina and to the payment of reasonable expenses involved in the taking of the proposed deposition. We are of the opinion that the trial court committed no error in its rulings upon the motion.

Counsel, by briefs and oral argument, refer to Code, 1931, 62-3-1, as amended, which provides for the taking, in behalf of one indicted for a felony, of the deposition of a nonresident witness upon the filing of an affidavit and upon notice to the prosecuting attorney in the manner prescribed in the statute. The portion of the statute which has been specifically referred to by counsel is as follows: "* * * the court or judge may authorize the employment of counsel, practicing at or near the place where the deposition is to be taken, *to cross-examine the witness on behalf of the State,* the reasonable expense whereof shall be paid out of the treasury of the State, upon certificate of the court wherein the case is pending." (Italics supplied.) Obviously the statutory language quoted immediately above is not in point on the question here presented.

In support of the motion, counsel for the defendant refers to Rule 15(c) of the Federal Rules of Criminal Procedure, but that rule is not pertinent to this case which was tried in a state court. Counsel refers also to the Sixth Amendment of the Constitution of the United States which provides that in criminal prosecutions the accused shall "have the Assistance of Counsel for his defence" and to Article III, Section 14 of the Constitution of West Virginia which provides that, in a criminal trial, the accused "shall have the assistance of counsel." Pursuant to constitutional and statutory mandate, the able attorney who represents the defendant was appointed by the trial court on December 27, 1967, to represent the accused in this criminal case. For such services counsel has been or will be paid from public funds, though we recognize that the amount which may be paid under the law of this state is inadequate to compensate counsel for his admirable and extensive services performed in this case in behalf of the defendant as an indigent person.

We are not aware of any law which would have authorized the trial court to direct or to require the payment of public funds in accordance with the motion to take

the deposition of the nonresident witness. We note, however, that the trial court granted ample postponement of the trial so as to enable the defendant to take the deposition of the witness or to arrange for his presence at the trial.

It is asserted in behalf of the accused that the trial court considered and entered an order on July 19, 1968, in the absence of the defendant, and that this was violative of Code, 1931, 62-3-2, which contains the following sentence: "A person indicted for felony shall be personally present during the trial therefor." Following is the language of the ninth point of the syllabus in *State* v. *Nuckols*, 152 W. Va. 736, 166 S. E.2d 3: "There is a presumption that the defendant is present throughout the proceedings of his trial when the record indicates that he was present at the various sequential stages, in the absence of any showing in the record to the contrary."

In numerous cases this Court has held that the trial, within the meaning of the statutory provision quoted above, commences with the arraignment and terminates with the final judgment. *State* v. *Vance*, 146 W. Va. 925, 936, 124 S. E.2d 252, 259. Even during the trial, presence of the accused is required only "when anything is done affecting him." *State* v. *Vance, supra,* pt. 8 syl. The following statement appears in *State* v. *Hill*, 120 W. Va. 582, 584, 200 S. E. 587, 588: "While Code, 62-3-2 requires that one indicted for a felony shall be present personally during his trial, the statute does not apply, after conviction and final judgment, when the proceedings of the trial are enrolled. Signing the court records, whether original or amended, 'is no step in the prosecution of a criminal, and no part of the trial but is simply the authentication of what has been done, and * * * he need not be present when the orders are signed.' "

The order in question was entered on July 19, 1968. It is a composite order, reciting the proceedings of the trial held on July 17 and July 18, 1968. The order discloses that the accused was present "in person" at the

commencement of the trial and also at the resumption of the trial proceedings after the noon recess on the same day. The same order, in reciting also the trial proceedings on July 18, 1968, discloses the presence of the accused "in person" throughout all aspects of the trial, including the completion of the testimony, the reading of instructions to the jury, argument of counsel, the return of the jury verdict and continuance of the case to September 3, 1968. The court record clearly discloses the presence of the accused at all stages of the trial on those two days. A subsequent order, entered on September 26, 1968, recites the appearance of the defendant "in person and by his attorney" and further states that "it is the judgment of the Court that the defendant is guilty of robbery by violence." Thereupon the court imposed the sentence of imprisonment for thirty years.

While a court of record speaks by the recorded orders which recite the court proceedings, the court reporter's transcript of the trial proceedings in this case also discloses the presence of the accused in person in court when he was arraigned and personally entered a plea of not guilty; when court proceedings resumed on the second day of the trial, and the presence of the accused in person in court on September 25, 1968, when the court orally overruled the motion to award a new trial and pronounced the sentence of confinement in the state penitentiary for a period of thirty years.

We are of the opinion that it has not been made to appear that the accused was absent from court during any stage or portion of his trial from the arraignment to the pronouncement of final judgment. Counsel in this connection apparently relies upon a contention that the accused was not present at the time the trial judge, by his signature, indicated a direction to the clerk to record the order in the book in which court proceedings in criminal cases are recorded. We are of the opinion that this contention is without merit.

The record discloses that the accused made an oral

confession, in the presence of police officers, which was recorded by a stenographer in shorthand characters and later transcribed in typewritten form. It is undisputed that the typewritten statement was not signed by the accused and that, in these circumstances, no effort was made to introduce the typewritten statement in evidence. It appears from the testimony that, before any incriminating statement was made by the accused, he was advised and admonished of his constitutional rights on two separate occasions by two separate police officers. In each of the two instances, the admonition or warning was made to the accused by reading to him certain language from cards customarily and regularly carried for that purpose by members of the Charleston Police Department. The language of the warning or admonition was as follows:

> "Before we ask you any questions you must understand your rights. You have a right to remain silent. Anything you say can be used against you in Court, and you have a right to talk to a lawyer for advice before we ask you any questions and to have him with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning. If you desire to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You will, also, have the right to stop at any time before you have a lawyer. Do you fully understand these constitutional rights?"

In each instance, according to testimony of the police officers, the defendant made an affirmative response by which he indicated that he understood his constitutional rights as they had been explained to him.

It is the contention of counsel for the defendant that the warning or admonition to a suspect, in order to render his subsequent confession admissible, must not only state that anything the suspect may say "may" be used against him in court but that the warning or admonition additionally must state that anything the suspect may say "will be used" in court against him if he is later tried on a criminal charge.

In support of the contention that the warnings or admonitions expressed to the defendant by the officers were so incomplete as to render the confession inadmissible, counsel for the defendant relies upon a sentence appearing in *Miranda* v. *Arizona,* 384 U. S. 436, 469, which is as follows: "The warning of the right to remain silent must be accompanied by the explanation that anything said can and *will be* used against the individual in court." (Italics supplied.) In the opinion in the same case, 384 U. S. 436 at page 471, the Court spoke of the warning of the right of the accused to remain silent and a warning that anything stated "can be used" against him. At page 479 of the same volume, the Court stated in the *Miranda* case that the accused must be warned prior to any questioning that he has the right to remain silent and that anything he says "can be used" against him in a court of law. At page 444, the Court stated that prior to any questioning, the person must be warned that he has a right to remain silent and that any statement he does make "may be used" as evidence against him.

A discussion of the *Miranda* case appears in 19 Am. Jur., Proof of Facts, Section 7, page 15. In a footnote there appearing, the following statement is made: "The opinion is therefore ambiguous as to whether a warning that the statement 'will' be used is required." See also Annot., 10 A. L. R. 3d 1054; 29 Am. Jur. 2d, Evidence, Section 555, page 609, et seq.

We are of the opinion that the *Miranda* case is not authority for the proposition that a suspect or accused person must be warned that any statement he may make "will be" used against him in court. Such a requirement would be unrealistic for the reason that an interrogating officer has no means of knowing that a statement made by the accused subsequently "will be" used against him in court. It must remain within the discretion of the prosecuting attorney to determine whether a statement made by the accused will or will not be offered as evidence in a subsequent trial of the accused upon a criminal charge; and it must be left to the trial court ultimately to

determine whether the statement is properly admissible as evidence and whether, therefore, the statement "will be" used against the person by whom it was made. We are of the opinion that the warnings or admonitions by the officers in this case were constitutionally proper.

As a further assignment of error, it is asserted that the identification of the defendant made by Lawman in open court during the trial was improper because that identification was "tainted" by the previous identification made by Lawman when the defendant was in the police cruiser. In support of this contention, counsel relies upon *United States* v. *Wade,* 388 U. S. 218; *Gilbert* v. *California,* 388 U. S. 263 and *Stovall* v. *Denno,* 388 U. S. 293. We are of the opinion that this contention is without merit.

In the *Wade* case, after the accused had been indicted and arrested upon a charge of robbery of a federally insured bank, and after counsel had been appointed to represent him, an F. B. I. agent arranged a lineup of the accused and five or six other persons at which all persons in the lineup were required to wear strips of tape on their faces similar to strips of tape which were on the face of the person who committed the robbery; and each person in the lineup was required to say "put the money in the bag", words which were alleged to have been spoken by the person who committed the robbery. The F. B. I. agent arranged for the presence of two employees of the bank who identified the defendant as the man who committed the robbery. It was held that the lineup constituted a "critical stage" in the prosecution at which the accused was entitled to be represented by counsel. On the question whether testimony relating to the identification in court should have been excluded on the motion made in behalf of the accused, the Court stated (388 U. S. 218, 242):

> "On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. * * * We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing

> to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error, * * * and for the District Court to reinstate the conviction or order a new trial, as may be proper."

The *Gilbert* case involved testimony of witnesses to the effect that they identified the defendant in a lineup which occurred sixteen days after the indictment was returned and after counsel had been appointed to represent him, the lineup having been held without previous notice to counsel and without the presence of counsel. The decision of the Court in the *Gilbert* case was similar to that in the *Wade* case.

The facts in the *Stovall* case were similar to those involved in the *Wade* and *Gilbert* cases, but in the *Stovall* case, which was before the Court in a proceeding in habeas corpus, it was held that the principles decided in the *Wade* and *Gilbert* cases, would not be applied retroactively to the facts of the *Stovall* case.

We are of the opinion that the present case is distinguishable from the *Wade* and *Gilbert* cases for various reasons. It does not appear from the record that the identification made by Lawman while the accused was in the police cruiser was arranged by police officers. Davis was at that time a mere suspect. His person had not been searched. The police investigation at that time was merely in the investigatory stage. It had not reached the accusatory stage.

There is no reasonable basis for a conclusion that Lawman's in-court identification of Davis was in any substantial sense based on the identification made while the two suspects were in the police cruiser. Only a matter of hours before that time, during the course of the robbery, Lawman had a much better means of forming a basis of identification of the defendant.

Even if it could be said that the trial court committed error in this respect, such error could be regarded as no

more than harmless error in the light of the other evidence, including the identification made by Houston Harold Gunter, the incriminating items of evidence found on the persons of the defendant and his brother, and the uncontradicted evidence of the oral confession of guilt made by the defendant in the presence of two police officers who testified as witnesses for the state. *State v. Riley*, 151 W. Va. 364, pt. 25 syl., 151 S. E.2d 308; *State v. Harlow*, 137 W. Va. 251, pt. 3 syl., 71 S. E.2d 330; 24A C. J. S., Criminal Law, Section 1887, page 872.

It is urged that the trial court erred in granting State's Instruction No. 1. In support of this contention, counsel relies upon *State v. McCoy*, 63 W. Va. 69, 59 S. E. 758; *State v. Morris*, 96 W. Va. 291, 122 S. E. 914 and *State v. Rollins*, 142 W. Va. 118, 94 S. E.2d 527. It is asserted that the instruction fails to include the essential element of animus furandi, or the intent to deprive Elk Finance and Loan Company of the money which is alleged to have been stolen. A portion of the instruction is as follows:

> "Therefore, if you believe from the evidence beyond all reasonable doubt, that Waldon Keith Davis acting in concert with Gary Wayne Davis did so rob the Elk Finance and Loan Company, by violence or by putting Walter R. Lawman in fear and took money belonging to the Elk Finance and Loan Company by force, then you may find the said Waldon Keith Davis guilty as charged in the within indictment."

We are of the opinion that the instruction sufficiently embodies the element of the taking of the money by force and violence and, therefore, this assignment of error is without merit. Furthermore, this objection to the instruction will not be considered by this Court because it was not urged when the instruction was offered. See Rule VI(c) Trial Court Rules for Trial Courts of Record; *State v. Etchell*, 147 W. Va. 338, pt. 5 syl., 127 S. E.2d 609; *State Road Commission v. Bowling*, 152 W. Va. 688, pt. 1 syl., 166 S. E.2d 119.

Objection is made to the burden of proof aspect of State's Instruction No. 2 which is as follows:

"The Court instructs the jury that where the State has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."

We are of the opinion that the giving of this instruction did not constitute error. An instruction substantially identical to State's Instruction No. 2 was held to be proper in *State v. Wendling*, 112 W. Va. 58, 164 S. E. 179. Defendant's Instruction No. 5 stated that if the jury should entertain a reasonable doubt on the question of the presence of the defendant at the time and place of the robbery, they should find him not guilty.

Finally, it is asserted that the evidence was insufficient to support the verdict and that the trial court should have directed a verdict of not guilty. We are of the opinion that the jury's verdict was amply warranted by the evidence. *State v. Stevenson*, 147 W. Va. 211, pt. 4 syl., 127 S. E.2d 638; *State v. Vance*, 146 W. Va. 925, pts. 3 and 4 syl., 124 S. E.2d 252; *State v. Wendling*, 112 W. Va. 58, 164 S. E. 179.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County, in refusing to award a writ of error and supersedeas to the judgment of the Intermediate Court of Kanawha County, is affirmed and the case is remanded to the Intermediate Court for such further proceedings as may be proper.

*Affirmed.*