STATE OF WEST VIRGINIA *v.* WILLIS SUMMERVILLE *et al.*

(No. 7265)

Submitted May 26, 1932. Decided June 7, 1932.

*Grover F. Hedges* and *S. P. Bell,* for plaintiffs in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Convicted of entering, without breaking, a storage house of the Hope Construction Company with intent to commit larceny, and sentenced to two years in the penitentiary, defendants Summerville, Holley and Arnold Long prosecute error. The errors charged are: (1) Insufficiency of evidence; (2) the refusal of instructions; and (3) prejudicial argument to the jury by the prosecuting attorney.

Thefts of gasoline from the storage house of the Hope Construction Company had been frequent, and it employed Mallory as a watch. According to Mallory's evidence, he arrived at the plant about six o'clock, January 20, 1931, secreted himself, and soon thereafter two persons, afterwards identified by him as Holley and Arnold Long, passed by him within a few feet, and both entered the tank house through windows. Expecting the arrival of an employee of the storage company, James Plant, from the city of Spencer, after waiting a short time, he started toward Spencer to meet him, and met a third man on the railroad crossing near the plant, whom he afterwards identified as Summerville. He watched this man enter the tank house by one of the windows through which the others had entered. Plant arrived soon, and hearing voices in the house, he went back to Spencer for an officer. Mallory said he watched three men carry out jacket cans, and return and again enter. He then left the scene, and met Plant on his return, accompanied by constable Reynolds. They then went to the tank building but finding no one there, they went to the office building nearby, and after a short time saw a flashlight in the tank building. Upon approaching the tank building, they observed two persons come out of one window and one person from another, whom Mallory identified as Holley Long. The three boys ran, one stumbled and fell and was arrested. He was identified as Summerville. Informed by Summerville that his companions

were Holley and Arnold Long, warrants were issued and they were arrested late that night. When Summerville stumbled and fell his pursuers heard a bucket rattle, and they picked up a bucket and funnel. According to Goe, a state witness, Summerville afterwards admitted owning the bucket and funnel. Another state witness said Summerville told him that he went up there to get some gasoline. Officers, acting under a search warrant, found at Summerville's home a "drum" which had been recently rolled to a bank and emptied of its contents and they detected the odor of gasoline at that place.

The evidence for defendants is to the effect that they were not at the plant at the time Mallory saw three men enter, at that time being at their supper some distance away at the home of Summerville; that they did not enter the tank house; that they were on their way to Spencer, after supper and passed through the plant to shorten the distance, carrying a flash light; that when they were near the tank house (which stored gasoline) three or four men came running from the building followed by other men; that shots were fired, and defendants started to run, Summerville being overtaken and arrested, the other two escaping. They denied the entering and all evidence tending to connect them with the offense, except being on the ground and passing through the plant on their innocent way to a garage at Spencer to hear "Amos & Andy" over the radio.

Discarding the verbal testimony of defendants' witnesses in conflict with that of the state, we find ample evidence to support the verdict, and the assignment of insufficiency of evidence is not well taken. The weight of evidence, and credibility of witnesses are within the province of the jury, and we cannot substitute our judgment for theirs on matters of fact.

The petition for writ of error complains that the state's witnesses were allowed to say that Summerville when arrested told them that Holley and Arnold Long were with him. No objection was made to the introduction of this evidence. That they were there with him is conceded. This assignment of error, and the introduction of an envelope found at the gasoline station addressed to Arnold Long, together with evidence

of the constable relating to the issuance and execution of the search warrant, are not made points of error in defendants' brief, and are presumably waived. We see no merit in them.

The next point of error relates to the giving and refusing of instructions. Six instructions were given for the state and eight for defendants. Six instructions tendered by defendants were refused. We see no error in the instructions given for the state, and none are pointed out. The brief complains of the refusal of the eight instructions offered, and especially of the refusal of Nos. 10, 11 and 13.

Defendants' instruction No. 1, refused, No. 2, given, and No. 3, refused, and No. 4, given, relate to the right of defendants to the benefit of any reasonable doubt as to their guilt, and cautioning the jury that strong suspicion of guilt is not enough to convict. Instruction No. 2, given, told the jury that the law presumed defendants innocent until the contrary is proven beyond all reasonable doubt, that mere suspicion or probability of guilt is not sufficient to convict; that the preponderance of the evidence to support the charge in the indictment is not sufficient, but that their guilt must be proven so clearly that there is no theory, consistent with the evidence, upon which they, or either of them, can be innocent. It is not error to refuse instructions, the substance of which has gone to the jury in other instructions. No. 4, given for defendants, is a repetition of the substance given in No. 2.

Defendants' instruction No. 8, refused, would have told the jury that in considering the alleged confessions it must appear that they were freely and voluntarily made and not obtained by violence, threats, through fear, hope of reward, artifice, etc. The trial judge refused the instruction because there was no evidence on which to base it. We find no evidence of a confession. Summerville, when arrested, confessed that he was Summerville, and voluntarily gave the names of his companions. He confessed to nothing which would implicate him or them in the commission of a crime, except the self-evident fact that they were on the premises, innocently passing through, according to their evidence.

Instruction No. 10, refused, would have told the jury that the burden was on the state to show beyond reasonable doubt that a crime had been committed, and that defendants committed that crime beyond reasonable doubt. It is argued that the refusal of this instruction ignored the defense of alibi. Defendants admitted that they were there passing through, but denied having entered the tank house, or taken gasoline. The alleged alibi is a denial of their presence, in the earlier part of the evening when Mallory saw three persons enter the building. This defense was fairly presented by the other instructions and we see no error in its refusal.

Instruction No. 11, refused, was a variation of the other instructions upon reasonable doubt, telling the jury that the evidence must arise above mere suspicion, or the highest degree of probability, and amount to a moral certainty of the guilt of the accused. The ordinary jury knows what a reasonable doubt means, and attempts to define it are discouraged. They but tend to confuse. *State* v. *Worley,* 82 W. Va. 350, 356, 96 S. E. 56; *State* v. *McDermott,* 99 W. Va. 220, 221, 128 S. E. 108.

Defendants' instruction No. 13, refused, would have told the jury that if they found a conflict in the evidence on any material fact, and they should entertain a reasonable doubt as to which evidence is true, then they should adopt the evidence, theory and conclusion most favorable to defendants. In view of the other instructions given embodying the substance of this offered instruction, we can see no error in its refusal. Instruction must be considered as a whole. The case is simple, and able counsel for defendants have, in their instructions given, fully placed before the jury the law governing the case.

We come to the argument of the prosecuting attorney, charged as prejudicial error.

The prosecutor in argument was discussing the claimed alibi which placed defendants at supper in defendant Summerville's house about one-quarter of a mile from the plant at six P. M., which was about the time Mallory said they were at the tank house, and said: ''All of these questions about

time, and it happened exactly on the time, and the people that remember the time are the defendants themselves and their witnesses, who come in and swear positively and absolutely they quit work at exactly six o'clock, went in and ate supper—at 5:30 they quit work, six o'clock they eat supper, set around a few minutes, then came to town. What do you believe under your oath? Do you believe in stopping this thing, or do you believe in letting people come in here with a sham—a disgraceful sham—trying to cover their rottenness, and say they didn't do it, it was somebody else. Look here at the defendants. Do you believe their statement? I tried as hard as I could to get them to turn around and look at the jury when they were making these statements, and had a hard time to get them to look around at the jury at all." In the closing argument, while discussing the evidence of defendants and their witnesses that they were at Summerville's house and had repaired an automobile up to near six o'clock, P. M., the prosecutor said: "I have no doubt they were doing some jimming around on the old car, fixing it up, and went up and got the gasoline, too, to go into it. You know what kind of people they are. Living down dirty row here. What do they work at? What is their occupation? What do they work at? What do they do? You know what they do. They get a living all right, but how? Why don't they show their occupation? Why don't they show what they do?" Whereupon counsel for defendants objected to the statement: "You know what they do", and the court sustained the objection. The prosecutor then said: "Go on and interrupt me. You have a right to have it put in the record and you have a right to make the defense for these people. But you know, as well as I know, and the jury knows, guilt is written on the face of each of these defendants. And you can't look at the jury now. You don't have the nerve. You know you stole this stuff and broke into this house and stole this stuff." Objection was made and sustained to this statement. At the close of the argument, counsel for defendants moved the court to instruct the jury to disregard seven statements made by the prosecutor in his argument, namely: (1) "If you

are going to let people confess and then let them loose, you don't know your duty as jurors, and are not jurors." The court then told the jurors that he would sustain the motion if the prosecutor had made that statement. (2) "What do they do? They haven't told their occupation. You know what they do for a living." The court then told the jury to disregard the statement, "You know what they do for a living." (3) "They can't face the jury. I call upon you to look at the jury." The court then sustained the motion to that statement. (4) "The properties and lives of people are at stake. When you take a man's life he ought to be punished." The court again sustained the motion. (5) "Why don't they go to work. It is not fair to let them steal for a living. Let them go to work." The court again sustained the motion. (6) "We ought to quit court if you don't convict in this case." The court again sustained the motion to disregard. (7) "I would protect your property the same as the Hope Construction & Refining Company's property." The court refused to eliminate that statement, remarking that the prosecutor ought to do so. Then the prosecutor said that remark could also be stricken out. We have detailed the argument to the jury, and the rulings of the court thereon with tedium, for this alleged error seems to be most confidently relied upon for reversal. The entire closing argument of the prosecutor (or that portion of it from the time the stenographer was directed to preserve it) contained in defendants' bill of exceptions No. 5, shows that the prosecutor's remarks were abusive, extravagant and unjustifiable. There was no evidence of the occupations of the accused, and a part of the argument assumes that they were parasites on society making their living by theft. The rule of law is well settled that an attorney through undue ardor to secure a conviction in accordance with his desires has no right to stir up the passion and prejudice of the jury by referring to matters irrelevant or facts not in proof. The public prosecutor should not be a partisan, and resort to intemperate and abusive language directed to the accused and witnesses calculated to stir up passion and prejudice in the minds of the jury, in

order to secure a conviction. Conviction, depriving one of life or liberty, should result only from the calm, deliberate, uninfluenced and unimpassioned judgment of his peers. A prisoner, though plainly guilty should be accorded a fair trial by an impartial tribunal.

Recently we have been called upon to pass upon errors in criminal cases from this county based upon alleged intemperate argument of the prosecutor. In *State* v. *Hively,* 103 W. Va. 237, 136 S. E. 862, we disapproved prejudicial remarks of counsel and based a reversal of the conviction on that and other errors. In that opinion, we quoted with approval: ''The position of state's attorney being semi-judicial, and it being his duty to be fair and just in his conduct of trials both to the state and to the accused, he has no right * * * to indulge in personal abuse of a defendant or witness, nor to characterize him as a criminal or a convict, though there may be basis for it in the evidence.'' Authorities were then cited. The case was retried and the conviction a second time was under review in *State* v. *Hively,* 108 W. Va. 230, 136 S. E. 862, and alleged prejudicial remarks of the prosecutor made a point of error. We deprecated the remarks and argument saying that ''abusive, extravagant and unjustifiable language on the part of counsel in argument or otherwise, has no proper place in a trial.'' There had been two convictions of Hively, and while there was a strong disposition on the part of the court to reverse, we presumed from the record that the trial court had instructed the jury to disregard the objectionable part of the argument, and we could not say that the argument, under such situation, was clearly prejudicial. In the instant case, the jury disagreed on the first trial. It is to be regretted that we have here another case where the language of argument is along the same line, and more abusive, intemperative and vituperative. A new trial means more costs to the state. In a way the trial judge disapproved the objectionable part of the argument as above set out. A vigorous instruction to disregard it would have been better. In the first place, counsel should not have been permitted to proceed with argument of that character.

The crucial point is whether the jury was unduly influenced by the unwarranted argument coming from an officer of the judicial tribunal. In *State* v. *Morris and Johnson*, 96 W. Va. 291, 122 S. E. 914, there was a persistent effort on the part of the prosecutor to introduce improper and prejudicial evidence attacking the character of the accused as a law abiding citizen in the face of the rulings of the court against the admission of such evidence; and the court had instructed the jury to disregard; but we held that the error was not wholly cured by the instruction, and reversed the case. That principle is applicable here; and we have concluded to set aside the judgment and verdict and award a new trial.

*Reversed; verdict set aside; new trial awarded.*