567 S.E.2d 916

**Claude Ray MORRIS, Petitioner Below, Appellant,**

v.

**Howard PAINTER, Warden, Mount Olive Jail and Correctional Complex, Respondent Below, Appellee.**

No. 29758.

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2002.

Decided July 3, 2002.

Letitia Neese Chafin, Esq., Law Office of H. Truman Chafin, Williamson, West Virginia, Attorney for Appellant.

C. Jane Moran, Esq., Williamson, West Virginia, Amicus Curiae.

Darrell V. McGraw, Jr., Attorney General, Stephen J. Small, Senior Assistant Attorney General, Charleston, West Virginia, Attorney for Appellee.

PER CURIAM:

This appeal was brought by Claude Ray Morris, appellant/petitioner below, from an order of the Circuit Court of Mingo County denying his request for habeas corpus relief.[1] In his petition for appeal, Mr. Morris assigned error to the circuit court's ruling that he was competent to stand trial.[2] After reviewing the record and listening to the arguments of the parties, we reverse the circuit court's denial of habeas relief.

### I.

The record indicates that on September 19, 1991, Mr. Morris killed his brother and sister-in-law, maliciously wounded his niece, and assaulted his nephew. He was apprehended several days after the offenses were committed. After his arrest and indictment Mr. Morris was initially found incompetent to stand trial and was referred to a State mental institution. In 1993, and again on October 24, 1995, the trial court concluded that Mr. Morris was competent to stand trial. At the second competency hearing, October 24, 1995, there were conflicting evidentiary reports on Mr. Morris' competency. Nevertheless, the trial court determined that the petitioner was competent to stand trial, and on October 27, 1995, three days later, a jury found Mr. Morris guilty of first degree murder in causing the deaths of his brother and sister-in-law. He was also found guilty of the malicious wounding of his niece and assault on his nephew. Mr. Morris was sentenced to life imprisonment without mercy.

On March 22, 1999, Mr. Morris filed a petition for a writ of habeas corpus in the circuit court, naming the Warden of the Mount Olive Jail and Correctional Complex as the respondent.[3] In his habeas corpus action, Mr. Morris, by counsel, argued before the circuit court that he was incompetent at the time of his trial, and that he was unable to assist his counsel in his defense at trial, as well as in the habeas corpus action. The circuit court again found that Mr. Morris was competent at the time of his trial and denied habeas relief. This appeal followed.

### II.

Mr. Morris challenges the circuit court's denial of his petition for habeas relief. We have observed that "[w]hen considering whether such a petition requesting post-conviction habeas corpus relief has stated grounds warranting the issuance of the writ, courts typically are afforded broad discretion." *State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 31, 537 S.E.2d 647, 652 (2000) (citations omitted). In Syllabus Point 1 of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), we held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." However, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). See *Stuckey v. Trent*, 202 W.Va. 498, 501, 505 S.E.2d 417, 420 (1998) (a circuit court's "rulings upon questions of law are reviewed *de novo*.") (citations omitted).

### III.

This appeal presents the issue of whether Mr. Morris is entitled to habeas relief on the grounds that he was mentally incompetent at the time of his trial, and was consequently unable to assist in his own defense.[4] Our cases are clear in holding that

---

1. An amicus brief was filed by Jane Moran, Esq. in support of Mr. Morris. Ms. Moran was co-counsel for Mr. Morris at his trial.

2. Mr. Morris made several other assignments of error in his petition for appeal. However, we find those issues are without merit.

3. When the petition was filed the warden was George Trent. However, the present warden is Howard Painter.

4. It will be noted that for unexplained reasons Mr. Morris did not set out this assignment of error in his brief. This issue was, however, contained in Mr. Morris' petition for appeal. During oral arguments it was made clear to the parties that some members of the Court believed that the plain error rule allowed the issue to be considered on the merits, even though it was not raised in Mr. Morris' brief. See Syllabus Point 1, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998) ("This Court's application of the plain

"[i]t is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent." Syllabus Point 5, in part, *State v. Hatfield,* 186 W.Va. 507, 413 S.E.2d 162 (1991). This Court has also made it clear that "[n]o person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him." Syllabus Point 1, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976).

The relevant facts of this case show that, shortly after Mr. Morris was arrested in September of 1991, he was initially found incompetent to stand trial, and transferred to a State mental facility. On March 3, 1993, the trial judge held a competency hearing as required, and ruled that Mr. Morris was competent to stand trial. However, the trial did not occur immediately after the finding of competency. It appears that the trial was delayed because Mr. Morris fell and broke his hip while in jail. Following hospitalization for his broken hip, Mr. Morris was returned to the county jail, but was shortly thereafter returned to the State mental institution.

In August of 1995, a psychiatrist for the State again provided a report indicating that Mr. Morris was competent to stand trial. Mr. Morris, through counsel, then requested an evaluation by independent psychiatrists, which the court permitted. Subsequently, on October 16, 1995, both Mr. Morris' psychiatrist and psychologist submitted reports to the court that indicated Mr. Morris was incompetent to stand trial. A principal finding made by Mr. Morris' experts was that he was not known to have spoken a word since his arrest in 1991.[5] Nevertheless, on October 24, 1995, the circuit court ruled that Mr. Morris was competent to stand trial. The trial be-

gan on October 25, 1995, and concluded on October 27, 1995.

■ We are concerned with the procedure used by the trial court in finding Mr. Morris competent, and with the results of that procedure. As pointed out in the *amicus* brief, Mr. Morris' psychiatrist was not able to attend the competency hearing or the trial that was to immediately follow the competency hearing. The trial court refused to continue the competency hearing to allow for the psychiatrist's attendance at a competency hearing at a later date. Also, following the trial court's ruling on competency, the court also refused to continue the trial, but did, however, allow Mr. Morris' psychiatrist to testify at trial *via* telephone. While we do not have a *per se* objection to such a procedure at trial, we believe that under the circumstances of this case it was critical for Mr. Morris' psychiatrist to have been present at the competency hearing to fully explain to the trial court the basis of his determination that Mr. Morris was incompetent. At the time of the competency hearing Mr. Morris was receiving 150mg. of Thorazine, 20mg. of Prozac and 10mg. of Buspar daily. In addition, Mr. Morris had not spoken to anyone, including counsel, since his arrest in 1991. Clearly these factors militated against rushing the competency hearing, and favored a finding of incompetency.

We, therefore, believe that Mr. Morris' competency hearing was deficient. This Court has held that "a defendant need only demonstrate that he or she was denied an adequate procedure for determining mental competency after the trial court was presented with evidence sufficient to prompt good faith doubt regarding incompetency." *State v. Sanders,* 209 W.Va. 367, 377, 549 S.E.2d 40, 50 (2001) (citation omitted). Mr. Morris, through counsel, has made such a showing in this case. Moreover, our independent review of the record shows that the preponderating evidence demonstrates Mr. Morris' incompe-

error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error."). The State was given an opportunity to have a continuance to brief the issue, but the State elected not to have the case continued.

5. The record reflects that up to the time of this appeal, Mr. Morris is not known to have spoken since his arrest over ten years ago.

tency at the time of trial, inasmuch as his persistent mental state resulted in his inability to communicate with his lawyers.

The procedure for addressing a defendant who has been found incompetent to stand trial is set forth in *W.Va.Code*, 27–6A–2(b)[1983].[6] In the event Mr. Morris is found to be incompetent for a second trial, our decision in *State v. Bias*, 177 W.Va. 302, 352 S.E.2d 52 (1986) outlines the possible course of action to be taken:

> A person who has been accused of a crime may not be committed involuntarily to a mental institution for an indefinite period of time solely for the purpose of determining and obtaining such person's competency to stand trial. Instead, after a reasonable period of time to determine the accused's competency to stand trial, and if incompetency is found, after a further reasonable period of time for the accused to attain such competency, the State, to satisfy equal protection and procedural due process requirements, must release the accused from *confinement* in the mental institution or commence civil commitment proceedings. In the civil commitment proceedings the State must show by clear, cogent and convincing evidence that the accused, like a person not accused of a crime, is likely to cause serious harm to himself or to others and should, therefore, be committed to a mental institution because of such propensity to do harm.

*Bias*, 177 W.Va. at 306, 352 S.E.2d at 56.

## IV.

In view of the foregoing, we find that the circuit court was clearly wrong in finding that Mr. Morris was competent to stand trial on October 25, 1995. Consequently, Mr. Morris' convictions and sentences are vacated. This matter is remanded to the circuit court for further proceedings pursuant to *W.Va.Code*, 27–6A–2.

Reversed and Remanded.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge IRENE C. BERGER, sitting by temporary assignment.

DAVIS, Chief Justice, dissenting:

In this case the appellant, Claude Ray Morris, presented a single assignment of error in his brief. Mr. Morris asked this Court to order his transfer to the psychiatric facility at William Sharpe State Hospital. The majority opinion has elected to ignore the relief prayed for in Mr. Morris' brief and has, instead, determined that his convictions and sentences should be vacated. I believe the majority was without authority to grant such relief. Therefore, I dissent.

### A. The Plain Error Doctrine Cannot Be Invoked to Address an Issue That Has Been Expressly Waived.

In the petition for appeal filed by Mr. Morris, he argued that he should receive a new trial because he was incompetent to stand trial. Additionally, Mr. Morris argued as an alternative that he should be allowed to serve his sentences at William Sharpe State Hospital. The Court granted Mr. Morris' petition without limiting the assignments of error. When Mr. Morris filed his brief, how-

---

6. *W.Va.Code*, 27–6A–2(b) [1983] provides:

(b) At the termination of such hearing the court of record shall make a finding of fact upon a preponderance of the evidence as to the defendant's competency to stand trial based on whether or not the defendant is capable of participating substantially in his or her defense and understanding the nature and consequences of a criminal trial. If the defendant is found competent, the court of record shall forthwith proceed with the criminal proceedings. If the defendant is found incompetent to stand trial, the court of record shall upon the evidence make further findings as to whether or not there is a substantial likelihood that the defendant will attain competency within the next ensuing six months, and if the court of record so finds, the defendant may be committed to a mental health facility for an improvement period not to exceed six months. If requested by the chief medical officer of the mental health facility on the grounds that additional time is necessary for the defendant to attain competency, the court of record may, prior to the termination of the six-month period, extend the period for an additional three months. Within ten days of the termination of such period, the court of record shall ascertain by hearing in accordance with subsection (a) of this section whether or not the defendant has attained competency to stand trial.

ever, he listed and argued only one of the issues raised in his petition. He requested this Court to order his transfer to William Sharpe State Hospital. Mr. Morris sought no other relief.[1] By abandoning his previous request for a new trial on the grounds of incompetency, Mr. Morris has waived that issue.[2] This Court has previously adhered to the rule that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). *Accord State v. Adkins*, 209 W.Va. 212, 216 n. 5, 544 S.E.2d 914, 918 n. 5 (2001) (per curiam); *State v. Allen*, 208 W.Va. 144, 162, 539 S.E.2d 87, 105 (1999); *State v. Easton*, 203 W.Va. 631, 642 n. 19, 510 S.E.2d 465, 476 n. 19 (1998); *State v. Riley*, 201 W.Va. 708, 712, 500 S.E.2d 524 n.2, 201 W.Va. 708, 500 S.E.2d 524, 528 n. 2 (1997) (per curiam); *State v. Phelps*, 197 W.Va. 713, 721 n. 5, 478 S.E.2d 563, 571 n. 5 (1996) (per curiam); *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995). Indeed, we crystallized the raise or waive rule in syllabus point 6 of *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981), wherein it was said that "[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." *Accord State v. Lockhart*, 208 W.Va. 622, 627 n. 4, 542 S.E.2d 443, 448 n. 4 (2000); *State v. Helmick*, 201 W.Va. 163, 172, 495 S.E.2d 262, 271 (1997); *State v. Potter*, 197 W.Va. 734, 741 n. 13, 478 S.E.2d 742, 749 n. 13 (1996); Syl. pt. 9, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995); *State v. George W.H.*, 190 W.Va. 558, 563 n. 6, 439 S.E.2d 423, 428 n. 6 (1993); *State v. Lola Mae C.*, 185 W.Va. 452, 453 n. 1, 408 S.E.2d 31, 32 n. 1 (1991); Syl. pt. 1, *State v. Schoolcraft*, 183 W.Va. 579, 396 S.E.2d 760 (1990); *State v. Sayre*, 183 W.Va. 376, 379 n. 2, 395 S.E.2d 799, 802 n. 2 (1990); *State v. Stacy*, 181 W.Va. 736, 739 n. 3 384 S.E.2d 347, 350 n. 3 (1989); *State v. Moss*, 180 W.Va. 363, 374 n. 16, 376 S.E.2d 569, 580 n. 16 (1988); *State v. Flint*, 171 W.Va. 676, 679 n. 1, 301 S.E.2d 765, 768 n. 1 (1983); *State v. Fairchild*, 171 W.Va. 137, 150 n. 7, 298 S.E.2d 110, 123 n. 7 (1982); *State v. Buck*, 170 W.Va. 428, 430 n. 2, 294 S.E.2d 281, 284 n. 2 (1982); *State v. Church*, 168 W.Va. 408, 410 n. 1, 284 S.E.2d 897, 899 n. 1 (1981).

The majority opinion has determined that it can invoke the "plain error doctrine" in order to address an issue not raised in Mr. Morris' brief. I do not question the authority of this Court to "*sua sponte*, in the interest of justice, notice plain error." Syl. pt. 1, in part, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998). However, the plain error doctrine cannot be used to address *expressly* abandoned or waived issues. *See Britner v. Medical Sec. Card, Inc.*, 200 W.Va. 352, 354 n. 5, 489 S.E.2d 734, 736 n. 5 (1997) (per curiam) ("The defendants' petition for appeal cited as error the circuit court's application of the five year statute of limitations to this case. However, the defendants did not address that issue in their brief and therefore have abandoned that assignment of error."); *Banker v. Banker*, 196 W.Va. 535, 539 n. 1, 474 S.E.2d 465, 469 n. 1 (1996) ("The defendant abandoned many of her claims raised in her petition for appeal.... We will address only the claims briefed by the defendant."); *State v. Buck*, 170 W.Va. 428, 430 n. 2, 294 S.E.2d 281, 284 n. 2 (1982) ("Pursuant to our established rule, we limit our consideration of this case to those arguments fully developed and argued and exclude others listed in the initial petition."); *State v. Yates*, 169 W.Va. 453 n. 1, 288 S.E.2d 522, 524 n. 1 (1982) (per curiam) ("The appellant makes a

---

1. *See* W. Va. R.App. P. 10(d) ("The appellant's brief shall follow the same form as the petition for appeal."), and 3(c) ("A petition for appeal shall state the following ...: 3. The assignments of error relied upon on appeal .... [and] 4. Points and authorities relied upon, [and] a discussion of law....").

2. In fairness to appellant's counsel, I note that during oral argument of appellant's petition for appeal, this Court's questions were related solely to the issue of Mr. Morris' requested transfer to William Sharpe State Hospital. Notwithstanding the Court's distinct interest in that particular issue during oral argument, however, the Court subsequently granted Mr. Morris' petition for appeal without limiting the assignments of error. In the absence of any such limitation, all issues not wished to be waived should have been included in the appellate brief.

number of assignments of error which all ultimately involve whether the evidence supported the jury's verdict. In his petition he also raised procedural points which he abandoned in his brief."); *State v. Knight*, 168 W.Va. 615, 617, 285 S.E.2d 401, 403 (1981) ("[B]y brief, appellant argued his assignments of error alleging unconstitutionality, insufficiency of the evidence, and failure to disqualify the prosecutor, but he abandoned the assignments enumerated three and four in his petition relating to the State's instructions."); *State v. Wotring*, 167 W.Va. 104, 105, 279 S.E.2d 182, 185 (1981) ("[Appellant] assigned fifteen errors in her petition for appeal.... In her brief, she consolidates or abandons most of the errors initially assigned and now asks us to review six assignments of error[.]"); *State v. Davis*, 153 W.Va. 742, 748, 172 S.E.2d 569, 573 (1970) ("[I]n the petition for writ of error and supersedeas filed in this Court, numerous assignments of error have been asserted. The assignments of error were summarized and reduced to six in number for the purpose of discussion in the brief filed by counsel for the defendant in this Court. Presumably other assignments of error have been waived or abandoned."); *Porter v. Woodard*, 134 W.Va. 612, 615, 60 S.E.2d 199, 201 (1950) ("Several assignments of error are made by defendants in their petition for an appeal, all of which, save the issue raised by the special plea and the general replication, have been abandoned."); *Gilmore v. Montgomery Ward & Co.*, 133 W.Va. 342, 345–346, 56 S.E.2d 105, 107 (1949) ("In its petition to this Court for a writ of error, defendant assigns as error the actions of the trial court in overruling defendant's demurrer ..., and in overruling defendant's motion for a bill of particulars. However, it appears that defendant has abandoned these assignments of error in its brief filed herein, and no further consideration will be given to them."); *State v. Marinitsis*, 130 W.Va. 613, 614, 45 S.E.2d 733, 734 (1947) ("Of the sixteen general assignments of error, upon submission [of the brief] all seem to have been abandoned except questions that turn upon the sufficiency of the indictment[.]"); *State v. Summerville*, 112 W.Va. 398, 400–01, 164 S.E. 508, 509 (1932), ("This assignment of error ... [is] not made [a] point[] of error in defendants' brief, [and is] presumably waived.").

There is no dispute that once this Court accepted Mr. Morris' petition for appeal without qualifications, he had a right to raise in his appellate brief every issue raised in his petition. By failing to do so, Mr. Morris *expressly*, not impliedly, waived his right to have this Court examine on the merits issues involving his convictions. Consequently, this Court's precedent prohibits the majority from relying on the plain error doctrine to address issues involving Mr. Morris' convictions. It was noted in *State v. Knuckles*, 196 W.Va. 416, 421, 473 S.E.2d 131, 136 (1996), that "waiver necessarily precludes salvage by plain error review." It has also been said that "[w]hen there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined." Syl. pt. 8, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). "In other words, '[w]hen a right is waived, it is not reviewable even for plain error.'" *State v. Myers*, 204 W.Va. 449, 460, 513 S.E.2d 676, 687 (1998) (quoting *State v. Crabtree*, 198 W.Va. 620, 631, 482 S.E.2d 605, 616 (1996)). As a result of the majority decision in this case, the Court is henceforth obligated to invoke the plain error doctrine to address issues that defendants have expressly waived. This sweeping change in the limited use of the plain error doctrine is wrong.

### B. The State Did Not Have the Burden of Requesting a Continuance.

During oral argument, when it became clear that some members of the Court were going to consider unassigned errors involving Mr. Morris' competency to stand trial, one member of the Court asked the State if it wished to have a continuance to brief the unassigned errors. The State had not briefed issues concerning Mr. Morris' competency to stand trial because Mr. Morris expressly waived those issues. Instead, the State's brief addressed only Mr. Morris' request to be transferred to William Sharpe State Hospital. Consequently, the State declined the Court's offer to request a continuance and indicated that it would rely upon

this Court's precedent which, until the decision in this case, precluded review of unassigned and waived errors. Not only was the State legally correct in declining to brief the issues waived, the majority improperly placed the burden on the State to request a continuance.

Until this case, the rule in this Court has always been that "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains[.]" Syl. pt. 2, in part, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). *Accord Cook v. Channel One, Inc.*, 209 W.Va. 432, 434, 549 S.E.2d 306, 308 (2001) (per curiam); *Rose v. Thomas Mem'l Hosp. Found., Inc.*, 208 W.Va. 406, 414, 541 S.E.2d 1, 9 (2000) (per curiam); *Jordache Enters., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 204 W.Va. 465, 473, 513 S.E.2d 692, 700 (1998); Syl. pt. 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966). By asking the State if it wanted to request a continuance, the burden on appeal was impermissibly shifted to the State. It was the exclusive burden of Mr. Morris, as the appellant, to request a continuance from this Court for the purpose of briefing an issue that he had failed to brief. In other words, the question of a continuance had to be directed to Mr. Morris, not to the State. This erroneous burden shifting deprived the State of the right to argue against granting Mr. Morris a continuance to brief an issue he failed to initially brief.

### C. Mr. Morris Was Competent to Stand Trial.

Assuming for the sake of argument that Mr. Morris properly briefed the issue of his competency to stand trial, I would affirm the lower court's determination that he was competent.

The record in this case shows that in 1991, Mr. Morris' brother and sister-in-law reported sexual abuse charges against him. Conse-quently, on September 19, 1991, Mr. Morris shot and killed both his brother and his sister-in-law. Additionally, he tried to strangle another relative and kidnaped his niece and nephew. The record reflects that after Mr. Morris was arrested he voluntarily stopped talking.

As a result of his complete silence and prior history of auditory hallucinations, Mr. Morris was initially found incompetent to stand trial. It was not until March 3, 1993, that he was found competent to stand trial. However, the trial did not immediately take place because Mr. Morris fell and broke his hip. As a result of the long delay following the first determination that Mr. Morris was competent, he was given a second competency evaluation. In August of 1995, a psychiatrist for the State opined that Mr. Morris was competent to stand trial. Thereafter, on October 16, 1995, Mr. Morris submitted an independent psychiatric report indicating he was incompetent to stand trial.

Having been presented with two conflicting psychiatric opinions, the trial judge held a hearing and took testimony on the issue of Mr. Morris' competency. At the conclusion of the hearing, the trial judge found that Mr. Morris was competent, even though he had not spoken since his arrest in 1991. *Cf. People v. Briggs*, 46 Ill.2d 281, 263 N.E.2d 109, 113 (1970) ("The fact of blindness or deafness of the accused may lessen the ability and capacity of the defendant to utilize his constitutional rights, but this will not prevent his being subject to trial."). The majority opinion has concluded that the competency hearing was inadequate because Mr. Morris' psychiatrist had to testify by telephone. Yet, the majority opinion cited to no authority that would discredit a competency hearing merely because a witness testified via the phone.

In the final analysis, it is the majority's position that because Mr. Morris has allegedly not spoken since his arrest, he must have been incompetent at the time of his trial.[3]

---

3. The record indicates that Mr. Morris can in fact speak and that he has voluntarily chosen not to speak. On January 2, 2000, a psychological examination was performed on Mr. Morris for the purpose of determining whether he required confinement at the mental health facility at Mount Olive. The examining psychologist subsequently reported: "At one point during the interview, after a comfort level had been established, Mr. Morris stated 'Yes' in a barely audible manner."

To accept the majority's analysis for determining competency would, in effect, mean that arrested criminal defendants can escape prosecution simply by remaining mute after being arrested. Not one court decision from any other jurisdiction has held that muteness, whether voluntary or involuntary, is sufficient to preclude prosecuting a criminal defendant. Only in the State of West Virginia is there now a *muteness defense* to a criminal prosecution.

### D. Mr. Morris Was Not Entitled to the Relief He Actually Requested in His Brief.

I have previously indicated that the only issue that was properly before this Court was Mr. Morris' claim that his alleged mental illness renders his confinement at Mount Olive cruel and unusual punishment.[4] Although the majority opinion has decided not to address this issue, I will address the matter on its merits. Prior to addressing the merits of Mr. Morris' only stated ground for relief, though, I must first examine the application of W. Va.Code § 28–5–31(b)(1980)(Repl.Vol.2001), the statute that provides a procedure for inmates seeking a transfer to a mental health facility, to this issue.[5]

(1) **Application of W. Va.Code § 28–5–31(b).** The State opposed the single ground of relief sought by Mr. Morris. The primary argument presented by the State was that the legislature has provided a procedure that is to be utilized for a prison inmate who is believed to be mentally ill and seeks to be transferred to a state mental health facility. The procedure imposed by the legislature is found in W. Va.Code § 28–5–31(b).[6] The

4. This Court has held that "[h]abeas corpus lies to secure relief from conditions of imprisonment which constitute cruel and unusual punishment in violation of the provisions of Article III, Section 5, of the Constitution of West Virginia and the Eighth Amendment to the Constitution of the United States." Syl. pt. 1, *State ex rel. Pingley v. Coiner*, 155 W.Va. 591, 186 S.E.2d 220 (1972). The Court recognized in syllabus point 2 of *Hickson v. Kellison*, 170 W.Va. 732, 296 S.E.2d 855 (1982), in part, that "[c]ertain conditions of . . . confinement may be so lacking in the area of . . . medical care and personal safety as to constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution." *See also* Syl. pt. 4, *Nobles v. Duncil*, 202 W.Va. 523, 505 S.E.2d 442 (1998) ("Deliberate indifference to the serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain which is proscribed by the prohibition on cruel and unusual punishment in the Federal and State Constitutions.").

5. It should be noted as a general matter that "[w]hen interpreting a legislatively created law, we typically afford the statute a construction that is consistent with the Legislature's intent." *Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 281, 546 S.E.2d 454,.461 (2001). *See also* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). We have also stated that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *See also* Syl. pt. 5, *State v. General Daniel Morgan*

*Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).

6. West Virginia Code § 28–5–31(b) (1980) (Repl. Vol.2001) provides in full:

When a convicted person in a jail, prison, or other facility is believed to be mentally ill, mentally retarded or addicted, as those terms are defined in article one, chapter twenty-seven of this code, and in need of treatment, training or other services, the facts relating to such illness, shall be presented to the chief administrative officer of the facility. Such facts may be presented by a correctional officer, member of a correctional institution medical staff, relative, or the convicted person. Immediately upon receipt of such facts, the chief administrative officer shall arrange for psychiatric or psychological examination of the person alleged to be so afflicted. If the report of the examination is to the effect that the individual is mentally ill, mentally retarded, or addicted and that treatment, training or other services are required which cannot reasonably be provided at the correctional facility, the chief administrative officer shall file within twenty days after presentation of the facts an application for transfer with the clerk of the circuit court of the county of location of the correctional facility. Such application for transfer shall include a statement of the nature of the treatment which the person's condition war-

State contends that Mr. Morris did not satisfy the requirements of the statute and, therefore, the Court could not grant habeas relief on this issue.

This Court had an opportunity to address the application of W. Va.Code § 28-5-31 in the case of *In re Crews*, 168 W.Va. 244, 283 S.E.2d 925 (1981). *Crews* involved several prison inmates who sought to be transferred to a state hospital on the grounds that they were suffering from mental illness and drug addiction. To obtain this relief, the inmates filed applications for transfer with the circuit court. This procedure was authorized under W. Va.Code § 28-5-31 at the time the in-

mates filed their applications. However, subsequent to the filing of these applications with the circuit court, the legislature amended the statute and provided a different procedure. Under the new procedure, an inmate could not file an application for transfer unless prison officials recommended transfer. *Crews* determined that the trial court had correctly denied relief to the inmates, and that the inmates had to comply with the amended version of W. Va.Code § 28-5-31 in order to seek transfer to a state hospital. *Crews* is instructive on the general requirements of the statute, but is not dispositive of the matter raised by Mr. Morris.

rants and the facility to which transfer is sought.

Within ten days of receipt of the application from the chief administrative officer, the mental hygiene commissioner or circuit judge shall appoint counsel for the convicted person if the person is indigent.

The clerk of the circuit court shall forthwith notify the convicted person, by certified mail, return receipt requested, delivered only to addressee, that such application has been filed, enclosing therewith a copy of the application with an explanation of the place and purpose of the transfer and the type of treatment to be afforded, together with the name, address, and telephone number of any appointed counsel. The person shall be afforded reasonable telephone access to his counsel. The clerk shall also notify the superintendent or other chief administrative officer of the facility to which transfer is sought. Within fifteen days after receipt of notice, the convicted person, through counsel, shall file a verified return admitting or denying the allegations and informing the court or mental hygiene commissioner as to whether the respondent wishes to oppose the transfer. Counsel shall file the return only after personal consultation with the convicted person. The superintendent of the facility to which transfer is sought shall also file a return within fifteen days of the receipt of notice, informing the court or mental hygiene commissioner as to whether the needed treatment or other services can be provided within that facility. If said superintendent objects to receiving the convicted person for treatment or services, the reasons for such objection shall be specified in detail.

If the transfer is opposed by either the convicted person or by the superintendent of the facility to which transfer is sought, the matter shall forthwith be set for hearing, in no event to exceed thirty days from the date of the return opposing such transfer, and the clerk shall provide to the convicted person, the superintendent of the facility to which transfer is sought, and the superintendent of the correctional facility, at least ten days' written notice,

by certified mail, return receipt requested, of the purpose, time and place of the hearing.

The convicted person shall be present at the hearing, and be afforded an opportunity to testify and to present and cross-examine witnesses. Counsel for the convicted person shall be entitled to copies of all medical reports upon request. The person shall have the right to an examination by an independent expert of the person's choice and testimony from such expert as a medical witness on the person's behalf. The cost of providing such medical expert shall be borne by the state if the person is indigent. The person shall not be required to give testimony which is self-incriminating. The circuit court or mental hygiene commissioner shall hear evidence from all parties, in accord with the rules of evidence. A transcript or recording shall be made of all proceedings, and transcript made available to the person within thirty days, if the same is requested for the purpose of further proceedings, and without cost if the person is indigent.

Upon completion of the hearing, and consideration of the evidence presented therein, the circuit court or mental hygiene commissioner shall make findings of facts as to whether or not (1) the individual is mentally ill, mentally retarded or addicted; (2) the individual because of mental illness, mental retardation or addiction is likely to cause serious harm to self or others; (3) the individual could not obtain the requisite treatment or training at the correctional facility or another appropriate correctional facility; and (4) the designated facility to which transfer is sought could provide such treatment or training with such security as the court finds appropriate; and, if all such findings are in the affirmative, the circuit court may order the transfer of such person to the appropriate facility. The findings of fact shall be incorporated into the order entered by the circuit court. In all proceedings hereunder, proof of mental condition and of likelihood of serious harm must be established by clear, cogent and convincing evidence, and the likelihood of serious harm must be based upon evidence of recent overt acts.

Through W. Va.Code § 28–5–31(b), the legislature has crafted a procedure with which an inmate must comply when seeking transfer from a correctional institution to a state hospital. Pursuant to this statute, if an inmate is believed to be mentally ill and in need of treatment, training, or other services, a correctional officer, member of a correctional institution medical staff, relative, or the inmate, must inform the chief administrative officer of the correctional facility. It is then the duty of the chief administrative officer to arrange for a psychiatric or psychological examination of the inmate. If the examination report indicates that the inmate is mentally ill and requires treatment, training, or other services that cannot reasonably be provided at the correctional facility, the chief administrative officer must file an application for transfer with the clerk of the circuit court of the county in which the correctional facility is located.

W. Va.Code § 28–5–31(b) further provides that if the transfer is opposed by either the inmate or by the superintendent of the facility to which transfer is sought, the matter must be scheduled for hearing by the circuit court or mental hygiene commissioner. At the hearing, proof of mental condition, and of the likelihood of serious harm, must be established by clear, cogent and convincing evidence. The likelihood of serious harm must be based upon evidence of recent overt acts. Upon completion of the hearing, the circuit court or mental hygiene commissioner must make findings of fact as to whether or not (1) the inmate is mentally ill; (2) the inmate, because of mental illness, is likely to cause serious harm to him/herself or others; (3) the inmate could not obtain the requisite treatment or training at the correctional facility or another appropriate correctional facility; and (4) the designated facility

to which transfer is sought could provide such treatment or training with such security as the court finds appropriate. If all such findings are in the affirmative, the circuit court may order the transfer of the inmate to the appropriate facility.

In my review of the provisions of W. Va. Code § 28–5–31(b), I have found that the statute fails to expressly provide for judicial review of an administrative determination that an inmate is not mentally ill, or that the inmate should not be transferred to another facility because of a mental illness.[7] I must address this omission by the statute, because in the instant proceeding it has been determined that Mr. Morris should not be transferred to another facility.[8]

**(2) Omission of judicial review by W. Va.Code § 28–5–31(b).** Under the procedure outlined in W. Va.Code § 28–5–31(b), the legislature has permitted judicial review of an administrative determination that an inmate *is* mentally ill and should be transferred to another facility. However, this statute does not expressly provide for judicial review of an administrative determination that an inmate *is not* mentally ill, or that the inmate should not be transferred to another facility because of a mental illness. The State contends that if prison officials do not recommend relief to an inmate under W. Va.Code § 28–5–31(b), the judicial system is powerless to intervene and order a transfer. I disagree.

I have grave constitutional concerns about the failure of W. Va.Code § 28–5–31(b) to expressly provide for judicial review of an administrative determination that an inmate is not mentally ill or that the inmate should not be transferred to another facility because of a mental illness.[9] This statute conclusively presumes that prison administrators are

7. In *Crews*, the Court did not address the issue of what recourse an inmate may have when an administrative determination has been made that an inmate is not mentally. ill, or that the inmate should not be transferred to another facility because of a mental illness.

8. See *infra* note 12 and accompanying text.

9. For example, in *City of Huntington v. Black*, 187 W.Va. 675, 421 S.E.2d 58 (1992), the Court was confronted with a civil service statute that

was silent on the issue of whether an internal hearing should be conducted prior to the discharge, suspension, or reduction in rank or pay of a police officer. The Court found that the statute's silence could not defeat principles of constitutional due process of law and held that a police officer subject to civil service protection must be afforded a predisciplinary proceeding prior to discharge, suspension, or reduction in rank or pay.

infallible. That is, W. Va.Code § 28–5–31(b) presumes that when a prison administrator determines that an inmate is not mentally ill or that adequate services are provided by the prison to treat a mental illness, no error can ever be found with such a determination. In my judgment, this statutory conclusive presumption cannot be permitted to deny an inmate the right to have judicial review of the legality of an administrative determination that he/she is not mentally ill or that he/she should not be transferred to another facility because of a mental illness. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment."). Due process of law would be violated by a complete absence of the right to have judicial review of a prison administrator's decision on such a critical issue. *See Queen v. West Virginia Univ. Hosps., Inc.,* 179 W.Va. 95, 106, 365 S.E.2d 375, 386 (1987) ("[T]he fundamental promise of due process is freedom from arbitrary treatment."); *Major v. DeFrench,* 169 W.Va. 241, 251, 286 S.E.2d 688, 694–95 (1982) ("It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state."); *Walter Butler Bldg. Co. v. Soto,* 142 W.Va. 616, 636, 97 S.E.2d 275, 287 (1957) ("Due process of law is such procedure as is within the limits of those fundamental principles of liberty and justice which underlie our civil and political institutions."). The Court has previously noted that we "will disturb the actions of prison administrators that infringe basic constitutional rights." *State ex rel. Anstey v. Davis,* 203 W.Va. 538, 545, 509 S.E.2d 579, 585 (1998).

Based upon the foregoing constitutional concerns, I conclude that a prison inmate may seek habeas corpus relief in circuit court to challenge a prison administrative determination, under W. Va.Code § 28–5–31(b), that he/she is not mentally ill or that he/she should not be transferred to another facility because of a mental illness.[10] *See State ex rel. Askin v. Dostert,* 170 W.Va. 562, 568, 295 S.E.2d 271, 277 (1982) ("It is fundamental that no individual can be required to forfeit constitutionally protected property and liberty interests without procedures designed to prevent arbitrary treatment by the government."); *Floyd v. Chesapeake & Ohio Ry. Co.,* 112 W.Va. 66, 73, 164 S.E. 28, 31 (1932) ("No procedure is just which deprives a [person] of the opportunity to be heard respecting the justice of the punishment to be inflicted.").

**(3) Mr. Morris presented insufficient evidence to obtain relief under W. Va.Code § 28–5–31(b).** Having determined that habeas relief may be available to a prisoner to challenge an adverse prison administrative decision under W. Va.Code § 28–5–31(b), I now turn to the merits of Mr. Morris' request for relief on this issue.[11]

---

**10.** Our cases are clear in holding that "[t]he State may not deprive prisoners . . . of their right to habeas corpus review of the legality of their confinement[.]" Syl. pt. 1, in part, *Tasker v. Griffith,* 160 W.Va. 739, 238 S.E.2d 229 (1977). *See also State ex rel. Titus v. Hayes,* 150 W.Va. 151, 159, 144 S.E.2d 502, 508 (1965) ("The primary object of habeas corpus is to determine the legality of the restraint under which a person is held[.]"); Syl. pt. 1, in part, *State ex rel. Nutter v. Mace,* 130 W.Va. 676, 44 S.E.2d 851 (1947) ("[I]f the process or proceeding under which the complaining party is confined or restrained is void a writ of habeas corpus is the proper remedy to invoke."). Indeed, pursuant to Art. 3, Sec. 4 of the state constitution, it is held that "[t]he privilege of the writ of habeas corpus shall not be suspended." *See Rhodes v. Leverette,* 160 W.Va. 781, 787, 239 S.E.2d 136, 140 (1977) ("In this State the privilege of the writ is even more absolute as 'the privilege of the writ of ' "); *State ex rel. Burgett v. Oakley,* 155 W.Va. 276, 279, 184

S.E.2d 318, 320 (1971) ("The writ of habeas corpus is . . . guaranteed by both the federal and State Constitutions."); *State ex rel. Nutter v. Mace,* 130 W.Va. 676, 685, 44 S.E.2d 851, 855 (1947) (Fox, J., dissenting) ("Thus we have the writ so firmly established in our law that it cannot be repealed or suspended by our State Legislature[.]"); *Ex parte Jones,* 71 W.Va. 567, 610, 77 S.E. 1029, 1047 (1913) (Robinson, J., dissenting) ("The people ordained that the privilege of the writ of habeas corpus should never under any circumstances be suspended.").

**11.** I will note in passing that the State has contended that it is only under the provisions of W. Va.Code § 27–6A–1 *et seq.* that a criminal defendant may be placed at William Sharpe State Hospital. I disagree. The general commitment provisions under W. Va.Code § 27–6A–1 *et seq.* are applicable to criminal defendants who: (1) have not been prosecuted; (2) have been found not guilty by reason of insanity; and (3) have

In the instant proceeding, the record indicates that prison officials had a psychological evaluation performed on Mr. Morris in January of 2000.[12] The evaluation was performed to determine whether Mr. Morris "should remain in the general prison population or be transferred to another facility such as the Prison's psychiatric ward." The psychological report indicated that Mr. Morris functioned well enough to remain in the general prison population. The following was included in the summary of the psychological report:

> Although Mr. Morris is in a wheelchair and is nonverbal, he appears to have functioned well in the mainline population, and would be best served to remain there. He has not been a problem for staff members and reacts well to others. Staff members feel that Mr. Morris possesses the ability to talk, and is electing to be nonverbal. He appears to have a bond with his cellmate of almost two years, who understands his wants and needs. Mr. Morris has a psychiatric history which includes auditory and visual hallucinations; however, this has not interfered with his functioning in the mainline population, and he is taking psychotropic medication.... He appears to be low functioning, and previous testing indicated he functions within the moderate range of retardation; however, he may be functioning at a somewhat higher level....

Mr. Morris has argued that he is mentally ill, and that the prison cannot properly treat his mental illness. The problem with Mr. Morris' contention is the lack of evidence to support transferring him to William Sharpe State Hospital. As previously indicated, under W. Va.Code § 28-5-31(b), a prisoner may be transferred to another facility only upon clear, cogent and convincing evidence of four factors: (1) the inmate is mentally ill; (2) the inmate, because of mental illness, is likely to cause serious harm to him/herself or others; (3) the inmate could not obtain the requisite treatment or training at the correctional facility or another appropriate correctional facility; and (4) the designated facility to which transfer is sought could provide such treatment or training with such security as the court finds appropriate.

While there is evidence that Mr. Morris has a mild mental problem, no evidence has been introduced to show that Mr. Morris is likely to cause serious harm to himself or others. There is nothing in the record indicating Mr. Morris has acted out or engaged in violent or destructive behavior while imprisoned. The record does not reflect that Mr. Morris has been taken advantage of by prison inmates or officials because of his mental health problem. There is also no evidence that Mr. Morris requires special mental health treatment or training that cannot be provided by the prison. In fact, the evidence has established that Mr. Morris does not need to be confined for treatment at the prison's psychiatric ward.[13] All that Mr. Morris presented as evidence for his requested transfer was the fact that he has been mute since his arrest in 1991. This evidence falls well short of the requirements imposed

---

been convicted but are awaiting sentencing. None of the provisions under this statute address the issue of transferring to a mental health facility a defendant who has been convicted, sentenced, and is confined. The latter situation is specifically addressed and controlled by W. Va. Code § 28-5-31(b). See Hall v. Board of Educ. of County of Mingo, 208 W.Va. 534, 541 n. 11, 541 S.E.2d 624, 631 n. 11 (2000) (" 'The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.' " (quoting Syl. pt. 1, UMWA by Trumka v. Kingdon, 174 W.Va. 330, 325 S.E.2d 120 (1984))).

12. Under the holding I advocate in this case, habeas relief would be available only after there has been an administrative denial of relief under W. Va.Code § 28-5-31(b), not before an administrative ruling has been made. The psychological evaluation in the instant case was done after Mr. Morris filed his habeas petition; however, I will treat the prison's decision regarding the evaluation as though it was rendered prior to filing the habeas petition. I am recognizing an exception under the specific facts of this case since there was a psychological evaluation of Mr. Morris that resulted in an administrative denial of essentially the same relief he seeks in his habeas petition, and both the evaluation and the administrative denial are included in the record before this Court.

13. The State points out in its brief that the prison's psychiatric ward "can provide most, if not all, of the behavioral health services provided by Sharpe Hospital."

by the legislature for effecting a transfer under W. Va.Code § 28–5–31(b). To lower the statutory requirements to accommodate Mr. Morris opens the flood gates for every prison inmate to remain silent for a period of time, and thereafter seek a transfer to a mental health facility. Consequently, I see no basis for disturbing the circuit court's ruling that Mr. Morris failed to establish that he should be transferred to William Sharpe State Hospital. Thus, had the majority opinion addressed the issue actually raised by Mr. Morris, no relief should have been granted.

### E. Conclusion.

In this proceeding the majority opinion elected to address an issue that was abandoned by Mr. Morris. As I have shown, the precedents by this Court precluded the majority from invoking the plain error doctrine to address an expressly waived issue. Consequently, no basis existed for the majority to grant relief to Mr. Morris on an issue that he expressly waived. I have also shown that, if the majority had addressed the single issue raised by Mr. Morris, no relief was available to him. In view of the foregoing, I dissent. I am authorized to state that Judge Berger joins me in this dissenting opinion.