627 S.E.2d 353

Jackie L. SNIDER, Petitioner
Below, Appellant,

v.

William M. FOX, Warden, St. Mary's
Correctional Center, Respondent
Below, Appellee.

No. 32767.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 2006.

Decided Jan. 27, 2006.

Jackie L. Snider, Pro se.

Darrell V. McGraw, Jr., Attorney General, Charles Houdyschell, Jr., Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

Jackie L. Snider (hereinafter referred to as "Mr. Snider"), appellant/petitioner below, has appealed from an order of the Circuit Court of Pleasants County dismissing his petition for a writ of habeas corpus.[1]  In this appeal, Mr. Snider seeks to have this Court vacate a prison disciplinary conviction and sentence he received for grabbing the breast of a female nurse at the St. Marys Correctional Center.[2]  After a careful review of the record and pertinent authorities, we affirm.

### I.

### FACTUAL AND PROCEDURAL HISTORY

On April 25, 2002, Mr. Snider was taken to see a nurse at St. Marys.[3]  During the visit, Mr. Snider asked the nurse if she knew why he had previously experienced bleeding in his scrotum.  Mr. Snider told the nurse that he believed the bleeding occurred from "choking his tube" in the shower.  Mr. Snider then proceeded to talk about sexual matters in a highly vulgar manner.[4]  When he concluded his sexual vulgarity Mr. Snider reached over to the nurse and "ran his hand over [her] breast."  The nurse informed Mr. Snider that he was not allowed to touch her and then left the room.

---

1. Mr. Snider filed his appeal pro se.

2. At the time of the incident in question Mr. Snider was incarcerated at St. Marys Correctional Center.  The appellee in this case, William M. Fox, is the Warden of St. Marys.  However, Mr. Snider is now confined at the Northern Correctional Facility.  The record does not disclose the reason for Mr. Snider's incarceration.

3. The record does not disclose the exact reason for the visit.

4. Because of the crudeness of Mr. Snider's language we will refrain from setting the language out verbatim.

Subsequent to Mr. Snider's assault of the nurse, an incident report was filed, and he was charged with violating administrative Rule 1.03, which is entitled "Rape." This rule states that "[a]n inmate shall not physically force, or attempt to force another person to submit to any sexual act, nor shall they threaten another person with harm in order to compel them to a sexual act."

On May 2, 2002, a disciplinary hearing was held before a magistrate. Mr. Snider pled not guilty to the charge of violating Rule 1.03. He moved to dismiss the charge on the grounds that the rule required sexual penetration.[5] The motion to dismiss was denied. The hearing was held. The only witness called was the nurse who testified to the conversation Mr. Snider had with her and his groping of her breast. Mr. Snider did not testify. The magistrate found Mr. Snider guilty and sentenced him to six months punitive segregation, ninety days loss of privileges and one year loss of good time.

Mr. Snider filed administrative appeals which were denied. He then filed a habeas corpus petition in the Circuit Court of Fayette County, which was dismissed for lack of jurisdiction. Thereafter, Mr. Snider filed the instant habeas petition in the Circuit Court of Pleasants County. The circuit court's order indicated that Mr. Snider "challenges his conviction upon the sufficiency of the evidence at the magistrate hearing." After reviewing the evidence, the circuit court denied relief to Mr. Snider. Specifically, the circuit court held:

> The magistrate's decision was based upon the testimony of the nurse in support of her report. The evidence shows that [Mr. Snider] attempted to begin a discussion of a sexual nature, told the nurse to go with him where no one would know and then grabbed her breast. This is certainly some evidence that [Mr. Snider] attempted to force another into a sexual act.

Subsequent to the circuit court's denial of Mr. Snider's petition, he filed this appeal.

5. Mr. Snider was represented by another inmate.

## II.

## STANDARD OF REVIEW

This Court has held that "[f]indings of fact made by a trial court in a ... habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 1, in part, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975). We have also held that " '[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute [or rule], we apply a *de novo* standard of review'." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *Morris v. Painter*, 211 W.Va. 681, 682, 567 S.E.2d 916, 917 (2002). *See also* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

## III.

## DISCUSSION

At the outset, it should be made clear that Mr. Snider does not deny that he intentionally grabbed the nurse's breast. Mr. Snider argues in his brief that he "is challenging the word rape and its definition, [because] the nurse stated there was no intercourse, she was not forced nor was there any harm to her, in this manner petitioner could only [be] charged with sexual misconduct[.]" In other words, Mr. Snider contends that to convict him there had to be evidence of "penetration."

In a recent decision by this Court we held that due process required that "[n]otice of alleged disciplinary violations must be provided to the charged inmate ... and should be stated with such specificity as to permit the inmate to understand the nature of the charge(s) against him/her." Syl. pt. 9, in part, *State ex rel. Williams v. Department of Military Affairs & Pub. Safety, Div. of Corrs.*, 212 W.Va. 407, 573 S.E.2d 1 (2002). The adequate notice concern addressed in

*Williams* has been commented upon elsewhere:

> Many prison rulebooks contain ambiguities. Correctional officers may believe that publications of this sort provide sufficient guides for ascertaining violations, but if some of their provisions had been incorporated in statutes or local ordinances, courts almost certainly would have struck them down as constitutionally vague and indefinite, *i.e.*, as not identifying clearly enough for those required to abide by them the limits of permitted and unlawful conduct.

2 Michael B. Mushlin, *Rights of Prisoners* § 9:2, at 105 (2002) (quoting ABA Standards for Criminal Justice, Standard 23–3.1 (1986)). In sum, for purposes of due process " '[a] hearing is not "meaningful" if a prisoner is given inadequate information about the basis of the charges against him.' " *Williams,* 212 W.Va. at 418, 573 S.E.2d at 12 (quoting *Austin v. Wilkinson,* 189 F.Supp.2d 719, 747 (N.D.Ohio 2002)).

Pursuant to W. Va.Code § 28–5–27(f) (1984) (Repl.Vol.2004), the Commissioner of the Division of Corrections is authorized to

> promulgate separate disciplinary rules for each institution under his control in which adult felons are incarcerated, which rules shall describe acts which inmates are prohibited from committing, procedures for charging individual inmates for violation of such rules and for determining the guilt or innocence of inmates charged with such violations and the sanctions which may be imposed for such violations.

In carrying out this authority, the Commissioner adopted Policy Directive No. 325.00, which outlines, among other things, prohibited conduct by inmates. The offense for which Mr. Snider was charged and of which he was convicted, Rule 1.03, is set out in the Policy Directive. As we previously indicated, Rule 1.03 provides that "[a]n inmate shall not physically force, or attempt to force another person to submit to any sexual act, nor shall they threaten another person with harm in order to compel them to a sexual act."

■ There is no question in this case that Mr. Snider was informed that he was charged with violating Rule 1.03. The issue Mr. Snider brings is that use of the word "rape" in the title of Rule 1.03 meant that he could not be convicted without evidence that he "penetrated" the victim. We disagree.[6]

■ In an effort to not elevate form over substance, we must recognize that it is the content of what is contained under a title that is critical in most instances, not the title itself. "The title to [a rule] is simply an index of what is contained therein[.]" *Casto v. Upshur County High Sch. Bd.,* 94 W.Va. 513, 520, 119 S.E. 470, 473 (1923). Our task is not to be sidetracked by the rule's title. Instead, our focus must be upon the critical element of what was set out under that title. In doing so, our task is twofold. First, we must determine whether the content of Rule 1.03 adequately informed Mr. Snider of conduct that was prohibited. *See Chatin v. Coombe,* 186 F.3d 82, 87–88 (2d Cir.1999) (prison rule barring unauthorized religious services and speeches failed to provide sufficiently explicit standards for those who applied it); *Arey v. Robinson,* 819 F.Supp. 478, 490 (D.Md.1992) (prison regulation requiring inmate to return medication to prison pharmacy within 24 hours of expiration date was unconstitutionally vague; regulation did not apprise inmate of ordinary intelligence that failure to return medication after stop date constituted possession of unauthorized medication); *Landman v. Royster,* 333 F.Supp. 621, 656 (E.D.Va.1971) (prison rule prohibiting agitation, misbehavior and misconduct gives no fair warning that certain conduct is punishable). Second, we must determine whether "some evidence" was presented to establish that Mr. Snider engaged in conduct

---

**6.** Mr. Snider suggests that he should have been charged with "sexual misconduct." Assuming, as Mr. Snider suggests, that such a charge exists under the Commissioner's Policy Directive, this fact is irrelevant to the extent that Mr. Snider's conduct is found to fall within the charge actually made against him. Further, it is black letter law in Anglo–American jurisprudence that "[w]hen specific conduct violates more than one [rule], the state, at its option, may choose to prosecute for the violation of one [rule] or for the violation of multiple [rules] under appropriate circumstances where multiple punishment is … authorized." *Derksen v. State,* 845 P.2d 1383, 1388 (Wyo.1993).

that was prohibited by the rule. *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356 (1985) ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be *some evidence* to support the findings made in the disciplinary hearing." (emphasis added)); 2 Mushlin, *Rights of Prisoners,* § 9:26, p. 242–43 ("A [prison] disciplinary proceeding is not a criminal trial, and the traditional criminal standard of proof beyond a reasonable doubt is not necessary to support a finding of a rule infraction.").

■ "It is generally accepted that '[s]tatutes and administrative regulations are governed by the same rules of construction.'" *Vance v. West Virginia Bureau of Employment Programs/Elkins Job Serv.,* 217 W.Va. 620, 623, 619 S.E.2d 133, 136 (2005) (quoting *Farm Sanctuary, Inc. v. Department of Food & Agric.,* 63 Cal.App.4th 495, 505, 74 Cal.Rptr.2d 75 (1998)). Under a fundamental rule of statutory construction, "[w]hen a statute [or rule] is clear and unambiguous and the [drafter's] intent is plain, the statute [or rule] should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute [or rule]." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959).

■ In examining the content of Rule 1.03 we discern three prohibitions. First, the rule states that an inmate shall not physically force another person to submit to any sexual act. This provision contemplates an actual consummation of the prohibited conduct. Second, the rule prohibits an inmate from attempting to physically force another person to submit to any sexual act. This provision does not require consummation of a sexual act—only the use of force in attempting the same. Third, the rule states that an inmate shall not threaten another person with harm in order to compel him/her to a sexual act. This provision would appear to be violated through consummation of a sexual act caused by a threat of harm. In sum, we believe that Rule 1.03 "'gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited[.]'" *Chatin,* 186 F.3d at 87 (quoting *United States v. Strauss,* 999 F.2d 692, 697 (2d Cir.1993)). *See also Witherspoon v. LeFevre,* 82 A.D.2d 959, 440 N.Y.S.2d 375, 376 (1981) ("Although the definition of disturbance is inartfully stated, we conclude that it gives all inmates the requisite notice that acts tending to threaten the security and order of the facility are prohibited.").

■ We must now assess whether "some evidence" was presented to show that Mr. Snider engaged in conduct prohibited by Rule 1.03. In performing this task, the United States Supreme Court has held that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Walpole,* 472 U.S. at 455–56, 105 S.Ct. at 2774, 86 L.Ed.2d 356. From our review of the record, we conclude that the conduct engaged in by Mr. Snider falls squarely within the second prohibition of Rule 1.03. That is, the only evidence presented at the hearing established that after Mr. Snider spoke to the nurse in extremely vulgar sexual language, including asking her to engage in sex, he attempted to physically force the nurse to engage in a sexual act when he grabbed her breast. This evidence was sufficient to find that Mr. Snider violated Rule 1.03.

## IV.

### CONCLUSION

The circuit court's order denying Mr. Snider habeas corpus relief is affirmed.

Affirmed.