# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Ulysses Bellamy,**
**Petitioner Below, Petitioner**

**vs)  No. 14-0541** (Randolph County 14-C-77)

**Marvin C. Plumley, Warden, Huttonsville**
**Correctional Center, Respondent Below,**
**Respondent**

**FILED**

January 30, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ulysses Bellamy, appearing *pro se*, appeals the May 15, 2014, order of the Circuit Court of Randolph County that denied his petition for writ of habeas corpus challenging his conviction on a prison disciplinary violation. Respondent Marvin C. Plumley, Warden, Huttonsville Correctional Center, by counsel John H. Boothroyd, filed a summary response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is an inmate at Huttonsville Correctional Center ("HCC"). During a November 18, 2013 power outage at HCC, several inmates in Unit B-2 (1) threw and/or destroyed items; (2) shattered the shatter-proof glass in the B-2 control room by throwing items at it; and (3) tied shut the fire doors at the rear of the pod. Petitioner was among those inmates charged with rioting during the power outrage in violation of Disciplinary Rule 1.04.[1]

At petitioner's disciplinary hearing, Sergeant Kenneth Wingfield testified that, when he

---

[1] Disciplinary Rule 1.04 provides, in full, as follows:

> No inmate shall riot, mutiny, or attempt to riot or mutiny, or plan with other persons to riot, mutiny, or prevent any employee from performing his/her duties or from entering, leaving, or moving about any part of the institution/facility/center by force or threat of force. No inmate shall incite or attempt to incite a riot or mutiny.

1

arrived at Unit B-2, the lights were back on, but that the unit still had to be secured. Sergeant Wingfield formed a five-man team of correctional officers to enter the pod and regain control. Sergeant Wingfield testified that, upon entry into the unit, he gave loud verbal commands for inmates to lay on the floor. The inmates failed to comply with Sergeant Wingfield's commands. Consequently, Sergeant Wingfield ordered the discharge of a chemical agent to bring the inmates under control. The inmates then complied with Sergeant Wingfield's instructions. Sergeant Wingfield testified that petitioner was identified as one of the participants in the riot based on the information provided to him by two correctional officers, who observed petitioner participating in the riot on video footage.[2]

Petitioner testified that he was inside his cell in Unit B-2 during the incident and that he was removed from his cell by correctional officers during the security sweep. The correctional hearing officer deferred ruling on petitioner's case, but subsequently found him guilty of violating Disciplinary Rule 1.04 based on the violation report and Sergeant Wingfield's testimony. The correctional hearing officer sentenced petitioner to a sixty-day loss of all privileges and a sixty-day term in punitive segregation—both beginning on December 3, 2013, and ending on February 1, 2014. The correctional hearing officer also ordered petitioner to pay his share of restitution for the damaged caused during the riot.

When petitioner appealed his disciplinary conviction to respondent warden, he challenged the officers' identification of him, alleging that any video of him in the dayroom of the pod must have been after-the-fact because the cameras needed to reboot after the power outage. Respondent warden denied petitioner's appeal, determining that the evidence, including the video footage, "support[ed] the finding of guilt." The Commissioner of Corrections affirmed respondent warden's decision.

Petitioner subsequently filed a petition for writ of habeas corpus challenging his conviction for violating Disciplinary Rule 1.04. On May 15, 2014, the circuit court denied the petition, finding that petitioner's disciplinary conviction and punishment comported with due process.

Petitioner now appeals the circuit court's May 15, 2014, order denying his petition. We review a circuit court's denial of a habeas petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). In addition, the standard for

---

[2] The two officers who observed petitioner on the video recording were identified in the correctional hearing officer's decision as "CM Booth" and "CCI Jackson."

upholding a disciplinary conviction requires only that some evidence exists to support the conviction. *See Snider v. Fox,* 218 W.Va. 663, 666-67, 627 S.E.2d 353, 356-57 (2006).

On appeal, petitioner asserts that there was no evidence to support his disciplinary conviction. Petitioner notes his testimony that he was inside his cell in unit B-2 during the November 18, 2013, incident and his assertion that the video cameras were not recording during the riot. Respondent warden counters that the determination that petitioner was guilty satisfied the "some evidence" standard set forth in *Snider.* We agree with respondent warden.

Petitioner disputes whether the video cameras started recording again before the correctional officers brought Unit B-2 under control. We find that Sergeant Wingfield's testimony contradicts petitioner's assertions. According to Sergeant Wingfield, when he arrived at Unit B-2, the pod was not yet secured, but the lights were functioning. If the lights were functioning, it was reasonable for the correctional hearing officer to infer that the video cameras had either already rebooted or were in the process of rebooting.[3] Given that Sergeant Wingfield further testified that a chemical agent had to be utilized before the inmates in the dayroom complied with instructions,[4] there was also some evidence that the cameras began recording again before Unit B-2 was secured. Thus, we find that the correctional hearing officer's determination—that the evidence, including the video footage, led to a finding of guilt—is supported by the record. Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition challenging his conviction for violating Disciplinary Rule 1.04.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: January 30, 2015

**CONCURRED IN BY**:

**Chief Justice Margaret L. Workman**
**Justice Robin Jean Davis**
**Justice Brent D. Benjamin**
**Justice Menis E. Ketchum**
**Justice Allen H. Loughry**

---

[3] We give substantial deference to the correctional hearing officer's findings because ascertaining whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Snider,* 218 W.Va. at 667, 627 S.E.2d at 357. (Internal quotations and citations omitted.) Rather, "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the [correctional hearing officer]." *Id.* (Emphasis added.)

[4] According to petitioner's violation report, Sergeant Wingfield specifically charged petitioner as being one of those inmates, who "refus[ed] to lay down on the floor."

3