# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Rocky H. Williams,**
**Petitioner Below, Petitioner**

**FILED**

**June 17, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 17-0844** (Marshall County 17-C-48)

**Karen Pszczolkowski, Superintendent,**
**Northern Correctional Facility,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rocky H. Williams, pro se, appeals the September 22, 2017, order of the Circuit Court of Marshall County dismissing his petition for writ of habeas corpus. Respondent Karen Pszczolkowski, Superintendent, Northern Correctional Facility,[1] by counsel John H. Boothroyd, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is an inmate at the Northern Correctional Facility, who has been convicted of disciplinary offenses which are classified as class I violations pursuant to Section 5(A)(1) of DOC policy directive 325.00 involving misconduct that "threaten[s] life or limb" and/or "seriously breach[es] facility security." Based on evidence seized by the mailroom supervisor, petitioner attempted to smuggle an intoxicating substance into the facility by sending a girlfriend $200 to purchase five grams of a compound known as "JWH" which, according to respondent, produces the same high as marijuana, and an additional $10 to purchase a small spray bottle and non-scented fingernail polish remover.[2] In the letters to his girlfriend, petitioner instructed her to combine the

---

[1]Effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

[2]Petitioner sent his girlfriend a voucher that she could use to obtain a total of $210 out of his funds.

1

powdered JWH and the fingernail polish remover in the spray bottle until the mixed substance looked like milk and spray the liquid onto sheets of notebook paper to infuse the sheets with JWH. Petitioner requested his girlfriend to send him three sheets of the infused paper at a time, until the supply of JWH was gone, "because it's three sheets per gram."

On September 28, 2016, the mailroom supervisor issued a disciplinary violation report to petitioner that charged him with "trafficking" in "any substance which may be injected, consumed, 'huffed,' inhaled, or ingested by any means with an intoxicating effect," in violation of disciplinary rule 1.11 of DOC policy directive 325.00, and with "trading or selling" with another person involving an "offer for trade, sale[,] loan, gift[,] or receipt [of] any good[s] . . . of any nature . . . other than through the system established by the [Superintendent] for that purpose," in violation of disciplinary rule 1.23. Following a hearing, a correctional hearing officer dismissed the disciplinary violation report because it "[did] not properly describe a rule violation." Thereafter, the mailroom supervisor issued a revised disciplinary violation report to petitioner on October 6, 2016.

At a second disciplinary hearing, petitioner argued that the evidence against him was inadmissible because of alleged procedural errors in its seizure and in the chain of custody. However, a different correctional hearing officer at the second hearing ruled that DOC policy directive 325.00 did not require the exclusion of the evidence.[3] The correctional hearing officer subsequently found petitioner guilty of "trafficking" and "trading or selling." For each disciplinary conviction, the correctional hearing officer sentenced petitioner to sixty days of loss of privileges and sixty days of punitive segregation. The correctional hearing officer further ordered the loss of 180 days of credit for good conduct. Pursuant to disciplinary rule 5.01, respondent approved this loss of "good time" credit. Petitioner appealed his disciplinary convictions and sanctions to respondent who affirmed the correctional hearing officer's disposition. Petitioner further appealed to the Commissioner of Corrections who also affirmed the disposition, finding "no reason to deviate from the decision of [respondent]." On March 21, 2017, petitioner filed a petition for a writ of habeas corpus challenging the disciplinary convictions and sanctions. Following an August 15, 2017, hearing, at which petitioner was represented by an attorney, the circuit court dismissed the habeas petition, finding "[no] probable cause exists to believe that . . . petitioner may be entitled to any relief whatsoever."

Petitioner now appeals pro se the circuit court's September 22, 2017, dismissal of the habeas petition. We apply the following standard of review in habeas appeals:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions

---

[3] A different correctional hearing officer presided at the second disciplinary hearing because, according to respondent, the first hearing officer voluntarily recused herself from this case given her participation in drafting the revised disciplinary violation report.

2

of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner raises numerous issues. We address only those four issues that could conceivably have merit and summarily reject all others.[4] Petitioner first argues that his disciplinary convictions violated his right to due process of law because a second hearing was held after he was issued a revised disciplinary violation report. The parties agree that the disciplinary charges were dismissed following petitioner's first hearing, but disagree as to the reason for the dismissal. Petitioner argues that the dismissal was based on a finding that the evidence against him was inadmissible. Respondent counters that the first disciplinary violation report was dismissed because it failed to state an offense. Based on our review of the record, we agree with respondent and find that the correctional hearing officer dismissed the first disciplinary violation report because it did not properly describe a rule violation. Disciplinary rule 6.11 of DOC policy directive 325.00 provides that a correctional hearing officer may remand a disciplinary violation report to the relevant personnel for revision "[i]n the event the violation report does not properly describe a disciplinary rule violation[.]" Disciplinary rule 6.11 further provides that the revised disciplinary violation report be issued to the inmate. Therefore, after reviewing the record, we find that the correctional hearing officer's remand to allow the issuance of a revised disciplinary violation report did not violate DOC policy directive 325.00.

We further find that petitioner's due process rights were not violated. In syllabus point one of *Nobles v. Duncil*, 202 W.Va. 523, 505 S.E.2d 442 (1998), we reiterated that minimum due process standards for prison disciplinary hearings are:

> "(a) Written notice to the inmate of the claimed violation; (b) Disclosure to him of the evidence against him; (c) Opportunity to be heard and to present witnesses and documentary evidence; (d) The right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) A neutral and detached hearing body; (f) A written statement by the fact-finders of the evidence relied on and reasons for discipline; and (g) The right to counsel if the state is represented by a lawyer." Syllabus Point 1, *Harrah v. Leverette*, 165 W.Va. 665, 271 S.E.2d 322 (1980).

---

[4]In addition to the issues set forth in petitioner's initial brief, petitioner argues in his reply that he was refused permission to call the chief of security at the facility as a witness. We decline to consider this issue because we find after a thorough review of the record that it was not presented to the circuit court. *See Watts v. Ballard*, 238 W.Va. 730, 735 n.7, 798 S.E.2d 856, 861 n.7 (2017) (finding that "[t]his Court will not pass on a non[-]jurisdictional question which has not been decided by the trial court in the first instance") (quoting Syl. Pt. 2, *Sands v. Sec. Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958)).

Here, we find that only the first of these standards was implicated by the correction hearing officer's remand of the disciplinary violation report for revision by the relevant personnel. Based on our review of the record, we find that the revised disciplinary violation report was issued to petitioner. Therefore, given that disciplinary rule 6.11 authorized a remand for that purpose, we conclude that the issuance of a revised disciplinary violation report did not violate petitioner's due process rights.

Second, petitioner argues that the evidence against him was inadmissible because of alleged procedural errors in its seizure and in the chain of custody. However, the correctional hearing officer at the second hearing ruled that DOC policy directive 325.00 did not require the exclusion of the evidence. Disciplinary rule 6.11 provides that the correctional hearing officer "may" exclude evidence because of irrelevancy, redundancy, or disruption to institutional order or security. In *Rosen v. Rosen,* 222 W.Va. 402, 409, 664 S.E.2d 743, 750 (2008), we found that "the word 'may' is inherently permissive in nature and connotes discretion." Also, an abuse of discretion standard normally applies to evidentiary rulings. *See* Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). Therefore, we find that the hearing officer's evidentiary rulings should be reviewed under the same standard.

We reject petitioner's challenges to the admissibility of the evidence against him. While petitioner argues that the mailroom supervisor failed to report the security threat that his activities represented to the facility's chief of security, as required by DOC policy directive 503.00, we find that a lapse in security procedure, even if true, did not impact on the seized evidence's admissibility in petitioner's disciplinary proceeding. Petitioner further argues that the mailroom supervisor failed to issue him a S-1 seizure form for the evidence. However, in each disciplinary violation report, the mailroom supervisor states that she issued petitioner such a form. Petitioner includes in his appendix an "evidence/property seizure receipt" for at least one of his letters and the bottom of that form shows that the chain of custody was maintained for that piece of evidence. While the parties dispute whether gaps exist in the chain of custody, we find that, based on our review of the appellate record, petitioner's evidentiary challenges are without merit.

Furthermore, we agree with respondent that, assuming, arguendo, that there were certain procedural errors in the seizure of the evidence and the chain of custody, DOC policy directive 325.00 did not require that the evidence be excluded given the correctional hearing officer's discretion in making evidentiary rulings. Section 1 of the policy directive provides that nothing therein shall "be construed as vesting with any inmate a liberty or property interest greater than that, which is otherwise provided by law." This case is an administrative—not a criminal—proceeding, and in syllabus point three of *Miller v. Toler*, 229 W.Va. 302, 729 S.E.2d 137 (2012), we held that the judicially-created exclusionary rule is not applicable in an administrative proceeding. *See also Harrah,* 165 W.V. at 680, 271 S.E.2d at 331 (finding that "[m]anagement of a prison system is an executive, not a judicial, function"). Therefore, after reviewing the record, we find that the correction hearing officer did not abuse her discretion in ruling that the exclusion of the evidence against petitioner was not required.

Next, petitioner argues that the evidence against him was insufficient to convict him of "trafficking," in violation of disciplinary rule 1.11, and of "trading or selling," in violation of

disciplinary rule 1.23. Respondent counters that the evidence was sufficient to convict petitioner of the disciplinary offenses. We agree with respondent and note that the standard for upholding disciplinary convictions requires only that there is some evidence to support the convictions. *See Snider v. Fox*, 218 W.Va. 663, 666-67, 627 S.E.2d 353, 356-57 (2006). The relevant question is "whether there is *any* evidence in the record that could support the conclusion reached by the [correctional hearing officer]." *Id.* at 667, 627 S.E.2d at 357 (quoting *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985)) (Emphasis added.). We give substantial deference to the correctional hearing officer's findings because ascertaining whether this standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* (quoting *Walpole*, 472 U.S. at 455).

We find that some evidence exists to support each of petitioner's disciplinary convictions. With regard to the "trafficking" conviction, petitioner's own correspondence reflects that he sent a girlfriend $200 to purchase JWH for the purpose of smuggling the substance into the facility by spraying it on sheets of notebook paper to be used for letters to petitioner. According to respondent, JWH produces the same high as marijuana. Based on our review of the record, we find that this is supported by the mailroom supervisor's statement in the revised disciplinary violation report that research into JWH revealed that it was "a cannabinoid." With regard to the "trading or selling" conviction, petitioner's correspondence reflects that he furthered his plan to have a contraband substance smuggled into the facility by sending his girlfriend an additional $10 to buy items outside "the system established by the [Superintendent]" for the purchase of goods by inmates. DOC policy directive 325.00, disciplinary rule 1.23. More specifically, disciplinary rule 1.23 prohibits an inmate from "trading and selling" with DOC employees and contractors, visitors to a correctional facility, and "any other persons who have dealings with" the correctional system. Here, we find that petitioner and his girlfriend have communicated both by letter and on the phone during his incarceration.[5] Therefore, we conclude that petitioner's girlfriend has "dealings" with the correctional system, much like a visitor to a correctional facility, because her communications with petitioner are subject to monitoring by correctional officials as authorized by statute.[6]

Finally, petitioner challenges the loss of 180 days of credit for good conduct. However, we reject petitioner's argument that this loss of "good time" unconstitutionally lengthened his criminal sentence.[7] In *Woodring v. Whyte*, 161 W.Va. 262, 275, 242 S.E.2d 238, 246 (1978), inmates

---

[5]In one of the seized letters, petitioner directs his girlfriend to inform him "in a letter or on the phone" that the JWH is "on it's [sic] way."

[6]In September of 2016, the monitoring of phone calls to or from adult inmates was authorized by West Virginia Code § 25-1-17(a) and the monitoring of an inmate's incoming and outgoing mail was authorized by West Virginia Code §§ 25-1-18(a) and (d). The Legislature has now re-codified those provisions at West Virginia Code §15A-4-6(a) and West Virginia Code §§ 15A-4-7(a) and (d).

[7]We note that neither party provides this Court any information regarding the length of petitioner's sentence.

argued that they were entitled to have the entire amount of "good time" credit "presently deducted from their remaining sentences." We disagreed, finding that "*the statute* does not require this construction." *Id.* (Emphasis added.); *see State ex rel. Gordon v. McBride*, 218 W.Va. 745, 749, 630 S.E.2d 55, 59 (2006) (finding that, pursuant to West Virginia Code § 15A-4-17, "the accumulation of good time is dependent upon the prisoner's behavior or 'good conduct' while incarcerated").[8] As we held in syllabus point eight of *Woodring*, "[c]ommutation of time for good conduct is a right created by the Legislature" and "[i]t is not recognized as a fundamental right or a part of a constitutional freedom." 161 W.Va. at 264, 242 S.E.2d at 240.

In *Woodring*, we found that the purpose of awarding "good time" credit is to both encourage rehabilitation and "aid prison discipline by rewarding the obedient." *Id.* at 275, 242 S.E.2d at 246; *see Gordon*, 218 W.Va. at 749, 630 S.E.2d at 59 (same). Accordingly, in *Gordon*, we found that West Virginia Code § 15A-4-17(f) provides that, "for a violation of disciplinary rules, 'any part or all of the good time which has been granted to such inmate pursuant to this section may be forfeited and revoked by the . . . superintendent of the institution in which the violation occurred.'"[9] 218 W.Va. at 749, 630 S.E.2d at 59. We find that DOC policy directive 325.00 is consistent with the applicable statute because disciplinary rule 5.01 requires that loss of "good time" credit be approved by the facility's superintendent. Here, respondent complied with disciplinary rule 5.01 by approving the correctional hearing officer's order that petitioner lose 180 days of "good time" credit. Therefore, based on our review of the record, we reject petitioner's challenge to the loss of 180 days of credit for good conduct. Accordingly, we conclude that the circuit court did not abuse its discretion in dismissing petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's September 22, 2017, order dismissing petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED**: June 17, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[8]At the time of our decision in *Gordon*, the "good time" statute was codified at West Virginia Code § 28-5-27. Effective July 1, 2018, the statute has been re-codified at West Virginia Code § 15A-4-17.

[9]In addition to re-codification, the present version of West Virginia Code § 15A-4-17(f) omits the word "warden." *See* fn.1 *supra*.

6